EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

v.

KIP'S BIG BOY, INCORPORATED.

No. CA 3–74–1255–C.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 19, 1977.

Joseph W. Sims, Jr., Trial Atty., Cathie A. Shattuck, Atty., Equal Employment Opportunity Comm., Denver Regional Litigation Center, Denver, Colo., for plaintiff.

Philip Wilson, Brady, Drake & Wilson, and Wallace P. Finfrock & David A. Eldridge, Eldridge, Goggans & Weiss, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiff Equal Employment Opportunity Commission filed this action on December 26, 1974, against Defendant Kip's Big Boy, Incorporated, alleging several general discriminatory practices as well as specific instances of discrimination against two individuals who had unsuccessfully sought employment with Defendant and three former employees discharged by Defendant. After trial to the Court, it is ADJUDGED that there are no ongoing company practices justifying the injunctive relief requested and that no specific violations of the Act were established by a preponderance of credible evidence.

Plaintiff is the Federal agency charged with the responsibility of enforcing the Equal Employment Opportunity Act, 42 U.S.C. 2000e *et seq.* (the Act). Defendant, a Texas corporation operating a chain of fast food restaurants, is subject to the provisions of the Act.

Evidence was adduced at trial with respect to specific allegations of employment discrimination affecting five individuals.

(1) The substance of the complaint lodged by Mr. Wilbur Turner, a black male, is that he applied in Dallas for employment as a busboy on June 22, 1971; that he was not hired; and that white persons were hired in busboy positions on or shortly after June 22. The evidence presented at trial, however, persuades the Court that Plaintiff has failed to establish a *prima facie* case under the formula laid down in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Specifically, the Court finds that there were no busboy positions open when Mr. Turner applied; that while the next busboy employed, on June 24, 1971, was white, he was a former Kip's employee; and that the following busboy hired, on June 28, 1971, was a black whose application was filed earlier than that of Mr. Turner. There is no preponderance of evidence, therefore, to support the allegation that Kip's failure to hire Mr. Turner was based on race; in fact,

Defendant's rebuttal of the general allegation of discrimination with respect to hourly employees was so effective that Plaintiff felt compelled to abandon its general allegation that Kip's discriminated against blacks in hourly positions.

(2) Similarly, the complaint of Ms. Shirley Sims, a black female, is that she applied in Dallas on January 19, 1972, for a position as waitress; that she was not hired; and that whites were subsequently hired as waitresses. Again, Plaintiff has failed to establish the elements of *McDonnell Douglas v. Green* by a preponderance of the evidence. Rather, the evidence indicates that Ms. Sims visited the Zangs Avenue unit of Kip's, asked some unidentified employee about a job as waitress, was told that no vacancies existed, and left without further ado. There is no evidence that Ms. Sims thereafter sought employment with Kip's. It is not even clear under these facts whether Ms. Sims "applied" for employment. In any event, the trial record is devoid of evidence that Kip's discriminated against females in the hiring of hourly employees.

(3) The allegations of Mrs. Dorothy Benton, a black female, are that she was harassed, intimidated, and eventually discharged from her position as a Kip's waitress due to her race. Defendant submitted convincing evidence, however, that Mrs. Benton made frequent billing errors; that she was unable to get along with fellow employees; and that she sometimes dealt with the public in a rude manner provoking complaints from customers. The Court is persuaded that counselling sessions during which Mrs. Benton was made aware of her shortcomings were the only "intimidation" or "harassment" to which she was subjected and that she was subsequently discharged for good cause and without regard to race after being given fair opportunity to correct her deficiencies.

(4) Mr. Almer Holliness, a black male, alleges that he was discharged from his job as busboy because of his race. Based on the evidence presented at trial, however, the Court is persuaded that Mr. Holliness was

discharged because of his refusal, without advance notice or explanation, to work his regular shift on December 31, 1971, at which time his services were greatly needed due to the heavy rush of business on that New Year's Eve. It was the uncontradicted testimony of the discharging supervisor, a credible witness, that any employee would have been discharged under these circumstances and that Mr. Holliness' race had nothing to do with the decision.

(5) Finally, Mr. Cecil Whiten, a black male employed as a restaurant manager by Kip's, alleged that he was discharged because of his race. Not only has Plaintiff failed to show discrimination by a preponderance of the evidence, however, but the Defendant has established to the satisfaction of the Court that Mr. Whiten's discharge was for good cause based on reasonable factors other than race. Specifically, Mr. Whiten was frequently hostile toward his co-workers, often unreasonably refusing to follow instructions of his superiors and sometimes being tyrannical in his supervision of subordinates. He declined to participate in training conferences or exercises and manifested an unacceptably casual attitude toward his responsibilities as a manager. On several occasions he failed to advise associates by telephone that he was ill and would not be reporting to work. His hostility was such that he alienated his co-workers and on at least two occasions Defendant sought to give him a fresh start by transferring him to another unit. The final precipitating cause of his discharge was his failure to follow company policy in the deposit of cash receipts. Upon being counselled as to the proper method of depositing funds to minimize risk of loss or robbery, he was asked to acknowledge in writing that he had read and understood the company policy in this regard. He unreasonably refused to do so and was discharged. The entire picture is one of an employee being given chance after chance to perform acceptably and finally being discharged when his hostility turned to intransigence.

■ With respect to the general allegations of discrimination, Plaintiff, as previously noted, has abandoned its earlier allegation of discrimination in hiring of hourly employees and at the close of trial pursued only its complaint that Kip's management selection process is discriminatory. In support of this position, Plaintiff's only meaningful evidence is that the percentage of protected minority groups among Kip's managers is lower than the percentage of protected minority persons among the population of the Dallas-Fort Worth Standard Metropolitan Statistical Area as a whole. Although this is enough to establish a *prima facie* case under *United States v. United States Steel Corporation,* 520 F.2d 1043, (5th Cir. 1975), the Defendant has come forward with abundant and persuasive rebuttal evidence to sustain its burden of demonstrating that it has not discriminated.

First, Defendant has established that Black applicants for management positions have been accepted at a rate of 10.5% as compared to a 9.3% acceptance rate for White applicants. The percentage of female applicants hired for management posts is also higher than the rate for male applicants.

Second, Defendant has shown that the percentage of protected minority persons holding management and administrative jobs in the Dallas-Fort Worth Standard Metropolitan Statistical Area in 1970 was 2.69% while Kip's hired protected minorities into 6.22% of its management openings and employed minorities in 4.18% of all its management and administrative positions. While this Court will not accept that the 2.69% figure is the entire management pool from which new minority managers could be recruited or that a percentage of 2.69% or above would alone rebut the *prima facie* case made out by Plaintiff's raw population figures, the fact that Defendant employs protected minority groups as managers and administrators at rates higher than the area as a whole is entitled to some weight as evidence that the company does not discriminate in filling such jobs.

Third, the testimony of Kip's executives indicated no discriminatory intent or practices. Indeed, the company had made some

modest efforts to recruit minority groups into its management training program.

In an effort to strengthen its allegation of discrimination with respect to Kip's hiring and promotion of minority employees, Plaintiff conducted a lengthy inquiry into the Kip's management selection process and particularly the test administered to management applicants. This approach was entirely theoretical as Plaintiff did not produce any minority applicant who claimed to have been discriminated against in the management selection process. The evidence produced at trial persuades the Court that the management selection process at Kip's is non-discriminatory. This finding is bolstered by the admission of Plaintiff's testing expert that the best indicator of a discriminatory selection procedure is that a significantly lower percentage of black and female management applicants are hired. Again, the record demonstrates that a higher percentage of minority applicants are accepted than are white males. Because the Court finds that the selection process has no discriminatory effect, it does not reach the question of business necessity.

█ Plaintiff also charges that Defendant assigns black restaurant managers to units located in predominantly black neighborhoods. The only evidence in support of this, however, is that as of November 12, 1975, Defendant employed three black managers in Texas, two of whom were working at units in predominantly black neighborhoods in Houston. It is questionable whether such a fact is statistically significant, but in any event, no black manager has complained of his locational assignment and the only black manager who testified, Mr. Cecil Whiten, was assigned to units in predominantly white neighborhoods during his tenure with Kip's. Further, there is no evidence that any black manager has ever been denied a request to be transferred to a unit in a predominantly white area. Credible testimony indicates that Kip's follows a liberal transfer policy and that locational preferences of individual managers are generally honored.

█ Finally, Plaintiff complains of several long-discontinued practices of Defendant:

(1) Prior to October, 1972, Kip's from time to time had in its employment application an arrest record inquiry. This was discontinued when Plaintiff advised Defendant that such an inquiry discriminated against blacks.

(2) Prior to the Fall of 1972, Defendant from time to time utilized newspaper classified advertisements which might have implied that certain jobs being recruited for were available only to males or females. This practice has been discontinued for almost four years and area newspapers no longer list job advertisements on such a sex-differentiated basis.

(3) Prior to 1974, employment records maintained by Kip's were deficient. The evidence established that Kip's made a good faith effort to comply with EEOC regulations prior to that time and that since 1974 the required records have been and continue to be maintained in a satisfactory manner.

In each of these instances, Kip's has remedied its deficiencies and there is no cause to suspect that the company will not continue to comply with accepted practices. There appears to be no basis, therefore, for granting the injunctive relief requested with respect to these discontinued practices.

In summary, the witnesses called by Plaintiff were not credible and the Defendant came forward with convincing and highly credible evidence to rebut each individual charge of discrimination. As for the general charges of discrimination, Plaintiff's case was almost wholly statistical and was effectively and convincingly rebutted by Defendant.

█ Because Defendant has prevailed so clearly on all issues raised, this Court hereby exercises its discretion under 42 U.S.C. 2000e–5(k) and allows Defendant reasonable attorney's fees as part of its costs of this action to be paid by Plaintiff. Counsel are directed to confer to determine whether an amount for attorney's fees can be stipulated or whether a hearing should be scheduled so

that the Court can determine a reasonable dollar figure. Defendant is requested to prepare and submit an appropriate form of judgment.