JEWISH WAR VETERANS OF the UNITED STATES, Department of Illinois, and Herman Moses, Commander, Jewish War Veterans, Department of Illinois, Plaintiffs,

v.

The AMERICAN NAZI PARTY et al., Defendants.

No. 66 C 1643.

United States District Court
N. D. Illinois, E. D.

Sept. 30, 1966.

**453**

Luis Kutner and Yale Stein, Chicago, Ill., for plaintiffs.

George Lincoln Rockwell, pro se and for other defendants.

George C. Pontikes for the American Civil Liberties Union, Illinois Division, amicus curiae.

PERRY, District Judge.

## MEMORANDUM

The original complaint filed by plaintiffs in this cause, under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1983 and 1985 (3), sought the issuance by this court of a temporary restraining order—and a preliminary injunction after a hearing —restraining defendants, "and all other persons acting by, through or in their behalf, individually and collectively, and all other persons who have, may now or may hereafter combine, conspire or act with them, or as individuals, from conducting, organizing or participating in public or semi-private meetings and from other unreasonable public demonstrations in support of alleged redress for alleged grievances, and:

"A) From organizing, or participating in any march, assembly, gathering or meeting on public property in the City of Chicago, or the place more commonly known as the Coliseum at 1513 South Wabash Avenue, or in the Northern District of Illinois, Eastern Division, until the further order of court.

"B) From doing any and all acts to injure, threaten or intimidate the Plaintiffs and others similarly situated, or in any way deprive them of the equal protection of the laws as conferred upon them by the 14th Amendment to the United States Constitution and the Statutes of the United States, Title 42 U.S.C. 1983 and 1985, Title 28, U.S.C. Section 1343, by the incitement to a riot or subject the Plaintiffs to deprivation of civil rights as aforesaid by the display of the swastika, by the use of hate slogans or degenerate minstrel doggerel or by the distribution of defamatory leaflets or pamphlets containing statements derogatory of Plaintiffs and their religious association.

"C) From depriving Plaintiffs and others similarly situated, of their rights under the Constitution and Statutes of the United States with respect to Plaintiffs' right of privacy and equal protection of the laws by purposeful and intentional discrimination by making utterances and distributing printed material that holds them up to contempt and ridicule or as being traitors and communists.

"D) From depriving Plaintiffs of their right of privacy by promoting public hatred and contempt of their religious identification.

"E) From conspiring to interfere with Plaintiffs' religious worship

or practices or to threaten to exterminate Plaintiffs as a religious and ethnic group in contravention to the principles of international law as enunciated by the Nurenberg Principles and the Genocide Convention of the United Nations."

The complaint charges that the American Nazi Party engages in public demonstrations and meetings to incite riot and to create disturbances of the peace, and distributes, nationally and internationally, anti-Jew and anti-Negro hate literature containing depraved obscenities and vulgar racist deprecations and makes public threats of exterminating and inflicting genocide upon the Jews and Negroes; that it is publicly dedicated to the fascist anti-human crimes against humanity doctrine of "Mein Kampf" by Adolph Hitler; that it is dedicated to resurrect by violence the principles of national Socialism, through its affiliate international organization, World Union National Socialists; that defendant George Lincoln Rockwell is the Commander of the World Union National Socialists and is the dominant person in establishing policy and the administration of all of the activities of the named defendants in the United States and throughout the international organization; and that defendant World Union National Socialists organization is simply the international duplicate of defendant American Nazi Party.

Because the meeting at the Coliseum was scheduled to be held the very next day, a hearing was held on September 9, 1966—the day of the filing of the complaint—and the court, having considered the evidence and exhibits introduced and having heard argument of counsel, stated that it would treat the motion for a restraining order as one for a preliminary injunction (to make its order appealable) and that, so treating it, the motion was denied, it appearing, among other things, that the proposed meeting at the Coliseum was to be held on premises lawfully hired for the purpose and that there was no immediate danger of rioting or disorder. Moreover, in so far as the complaint sought relief on behalf of members of the Negro race, the plaintiffs were without standing. Hindsight now makes it appear that the denial of the motion for injunction was a sound ruling because the meeting at the Coliseum where defendant Rockwell spoke was attended by an audience estimated at only from 150 to 180 persons and the meeting caused no civil disorder.

Of late, marches, demonstrations and picketing have been widespread and on the increase throughout the country—particularly, during the past year, in Chicago. The peaceful marches of Negroes in Chicago into business areas and their sit-down demonstrations attracted many irresponsible and violent participants and a climate of racial unrest and rioting has prevailed with alternating cries of "Black Power" and "White Power".

In this turbulent situation, defendants, who are avowed adherents of Nazi principles of hate and violence and who are disciples of Adolph Hitler, entered the picture, assumed the self-proclaimed role of defenders and spokesmen for all white people, and started marching and demonstrating under the banner of the swastika.

With Nazi symbols and carrying placards designed to spread race hatred, they appeared in white neighborhoods and then announced a march to be held in a Negro neighborhood. The march was held with less than 100 of the so-called "storm-troopers" participating but the police were on hand and, aided by a group of Negro youths, kept order in a situation where violence might have erupted.

The defendants, emboldened by success in marching and speaking without interference from any municipal government, the police or any court, announced that on the Jewish High Holy Days, beginning September 15, 1966, a Nazi march into Jewish neighborhoods would be held. The line of march as outlined would take them by and near Jewish synagogues

carrying placards inscribed with vicious, irreverent and vulgar language directed to worshipping, law-abiding citizens of the Jewish faith,—all this under the cloak of freedom of speech, and all in direct and flagrant violation of the right of a people to assemble and worship peacefully and without insult.

On September 14, 1966, plaintiffs filed an "Emergency Complaint for Temporary Restraining Order" in this cause, incorporating by reference the original complaint filed herein—but excluding that portion thereof referring to the meeting of September 10, 1966 at the Coliseum in Chicago, Illinois—and alleging, on information and belief, that the American Nazi Party and the other defendants "intend to demonstrate and march in the City of Chicago and environs, around the Jewish Synagogues during the Jewish High Holidays of Rosh Hashana and Yom Kippur, The Day of Atonement, from the sunset of September 14, 1966 to and including September 24, 1966, and thereafter," and that such march or demonstrations by the defendants would tend to incite riot, create public disturbances and to deprive the plaintiffs and others, particularly the people of the Jewish faith, of their rights, privileges and immunities as granted to them under the statutes of the United States and the Constitution.

A hearing was held at which evidence was taken and exhibits were introduced and the court then and there found, and again finds, that the plaintiffs had standing in court to bring the action and that a present danger did exist that riots would be incited; that the plaintiffs had no remedy at law and that irreparable damage would be done to them unless the court entered the restraining order sought by the plaintiffs. The restraining order was entered by this court on September 14, 1966, and is here again reaffirmed.

On September 22, 1966, when the case was called, the American Civil Liberties Union, Illinois Division, having moved for and been granted leave to intervene as amicus curiae, then asked for and was denied leave to file a motion to dismiss whereupon, defendant Rockwell, speaking for himself and other defendants, adopted it as defendants' motion.

The court heard further testimony and argument and is of the view that no further evidence is required herein and that a final decree should be entered in this cause.

From the evidence taken in this matter the court finds that far from being the wide-spread and vital organizations that publicity and demonstrations would lead us to believe, the defendant Rockwell's American Nazi Party and his World Union National Socialists consist of a gapping framework of small units, dotted in a number of cities, containing individuals who spend much of their time preparing and sending out race hatred-inciting literature and cartoons although defendant Rockwell did testify, with a straight face, that he had given strict orders to everybody in the party "that nobody is to deliver to Jews anti-Jewish literature or to Negroes anti-Negro literature. We make a great effort not to do this, specifically to avoid offending anybody." In view of evidence introduced of other conduct and acts of said defendant, the court considers this testimony unworthy of belief.

During the hearings, the defendants—and principally defendant Rockwell—made no effort to conceal their personal virulent antipathy towards anyone who is a Negro or a Jew.

Each of the organizations has a certain phantom-like quality because it appears that before either existed defendant Rockwell declared himself the Commander of each and thereafter named a few other persons to office. On testimony he was able to name only a handful of persons to whom he and he alone has bestowed titles of "Major", "Captain" and "Lieutenant".

It does appear, however, that defendants' efforts to incite hatred and to add fuel to the bonfire of racial unrest have been welcomed by some who advo-

cate "White Power" and that defendants' efforts have not been without monetary reward because defendant Rockwell admitted the existence of a bank account in Arlington, Virginia, under the name of a corporation (George Lincoln Rockwell, Inc.) which he organized and controls completely. Funds from this account are used to pay for the support of several of his children, for his own withdrawals therefrom and to pay for pamphlets and cartoons that insult and inveigh against Negroes and Jews.

Defendants do not march, or seek permission to march, for the purpose of obtaining lawful rights for themselves. There is nothing constructive in their activities. By their scurrilous attacks they seek only to destroy—to take from others rights to which they are éntitled as human beings as well as under the Constitution.

Defendant Rockwell is the moving spirit of the American Nazi Party and the World Union National Socialists. Without his publicity-seeking activities, his two brain children would wither and die. Said defendant frankly admitted that "I make no bones about the fact that I seek publicity, as any politician does."

Apparently only about 500 persons throughout the whole of the United States are subject to the influence or domination of defendant Rockwell and his Nazi dogma.

The complaint in this cause (together with the so-called "Emergency Complaint" clearly sets forth a conspiracy between defendants for the purpose of depriving plaintiffs in this cause and others,—people of the Jewish faith—of equal privileges and immunities which have been granted to them under the Constitution and the statutes of this country. The evidence showed a clear and intentional discrimination against plaintiffs and others of the Jewish faith.

■ The right to assemble for worship and to practice one's religion safely, peacefully and with dignity is so much a part of everything for which this country stands that a violation of that right cannot be tolerated and unless defendants herein are restrained by this court plaintiffs and others of their faith will be subjected to harassment, oppression and intimidation in the exercise of their religious worship.

There is also a very real, present danger that unless this court does restrain defendants (who openly advocate violent principles) public disturbances may occur and irreparable injuries may be inflicted.

■ This court has jurisdiction of the subject matter hereof and of the parties hereto. As a court of equity, this court will entertain plaintiffs' prayer for relief in this cause before the occurrence of the injury which is feared.

The complaints in this cause were amended on their face to include the George Lincoln Rockwell Party, Inc., as a party defendant. The court, however, finds that the complaint fails to state a cause of action against said defendant; that no evidence was introduced against it; and that this cause should be dismissed as to the defendant George Lincoln Rockwell Party, Inc.

■ There being no evidence that defendants will in the future cease their discrimination against and harassment of plaintiffs as herein set forth, this court should grant to plaintiffs relief against such discrimination and harassment and is accordingly entering a decree herein simultaneously herewith.

This memorandum will serve as findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.