**Alfonse REICHENBERGER, et al., Plaintiffs-Appellants,**

**v.**

**Rev. Richard PRITCHARD, et al., Defendants-Appellees.**

No. 80-2264.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1981.

Decided Sept. 18, 1981.

Rehearing Denied Oct. 21, 1981.

Jeff Scott Olson, Julian & Olson, S. C., Percy L. Julian, Madison, Wis., for plaintiffs-appellants.

Richard G. Niess, Frank M. Coyne Law Office, Robert Horowitz, Madison, Wis., for defendants-appellees.

Before PELL and SPRECHER, Circuit Judges, and MAROVITZ,* Senior District Judge.

PELL, Circuit Judge.

Appellants' claim for injunctive and monetary relief under 42 U.S.C. §§ 1983, 1985(2) and 1985(3) were dismissed by the trial court for failure to state a cause of action pursuant to Fed.R.Civ.P. 12(b)(6). The court also awarded attorney's fees to the prevailing defendants. The questions presented by this appeal are: (1) whether allegations that the defendants conspired to eliminate nude dancing in the plaintiffs' nightclubs by interfering in various municipal administrative proceedings state a cause of action when neither the plaintiffs' expressive activities nor business have been interrupted; and (2) whether the trial court abused its discretion in awarding attorney's fees to the defendants.

* Judge Abraham Lincoln Marovitz, Senior District Judge of the Northern District of Illinois, is sitting by designation.

## I. THE ALLEGATIONS OF THE COMPLAINT

■ It is well settled that for the purpose of reviewing the grant of a motion to dismiss, the well-pleaded factual allegations of the complaint are taken as true, and the grant is appropriate only if it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Ashbrook v. Hoffman*, 617 F.2d 474, 475 (7th Cir. 1980). In reviewing the complaint, however, it is well to keep in mind that only factual allegations will be considered, and that legal conclusions which may be alleged are not binding upon the court. *City of Milwaukee v. Saxbe*, 546 F.2d 693, 704 (7th Cir. 1976). For the purposes of determining whether the plaintiffs' second amended complaint states a claim upon which relief can be granted, we accept as true the following factual allegations of the complaint.

The plaintiffs in the suit, Alfonse and Thomas Reichenberger (the Reichenbergers), own and operate two nightclubs in the City of Madison, Wisconsin. The clubs sell liquor by the drink, and present nonobscene nude dancing entertainment. The clubs' economic survival depends upon offering the combination of liquor sales and nude dancing, and the Reichenbergers derive their living from the operation of the two clubs.

The defendant the Reverend Richard Pritchard (Pritchard) is a Madison minister. He is also a leader of a community organization, Citizens Concerned for Our Community (CCOC), which has as one of its goals the elimination of nude dancing at the plaintiffs' nightclubs.

The defendant Jean Stewart (Stewart), has been a Madison alderperson and member of the Madison Common Council since before December 1977. She shares with Pritchard and CCOC the goal of elimination of the nude dancing at the plaintiffs' nightclubs.

Prior to November 1977 the defendants began to conspire together and with others not named in this suit for the purpose of completely suppressing the nude dancing presented at the plaintiffs' clubs by putting them out of business. In furtherance of the conspiracy, the defendants sought to participate in three separate municipal administrative proceedings relating to the plaintiffs' business, in an effort to have the plaintiffs' liquor licenses revoked, or to make the cost of renewal of the licenses prohibitively expensive.

### A. The Certificate of Nonconforming Occupancy.

The first such proceeding related to the plaintiffs' attempt to obtain a certificate of nonconforming occupancy for the clubs. Prior to January 1978, entertainment in all Madison businesses selling liquor was regulated by §§ 9.10(10)11 and 9.11(10)(d)9, Regulations for Entertainers and Employees, Madison General Ordinances, which proscribed all nude entertainment on pain of revocation of the offender's liquor license. These ordinances were never enforced, however, and the plaintiffs' liquor licenses were renewed annually despite the clubs' violations of the regulations. In December 1977, the Common Council repealed the above regulations, and enacted a zoning-licensing regulatory scheme, which created a definition of "adult entertainment tavern," based on the dress (or undress) of employees and entertainers, and established both the conditions under which such taverns could operate, and the areas of the city in which they might lawfully exist. § 9.10(17), Madison General Ordinances. It was generally agreed that existing businesses falling within the adult entertainment tavern definition but operating outside the newly designated areas, could continue to operate by obtaining certificates of nonconforming occupancy from the City Zoning Administrator pursuant to § 28.12(6)(c), Madison General Ordinances, and the plaintiffs proceeded to apply for such certificates.

Application for a certificate of nonconforming use requires submission of documentary proof of lawful existence prior to the effective date of the zoning change, and the plaintiffs submitted such proof. The

defendants also submitted documents to the Zoning Administrator, without notice or service upon the plaintiffs. The defendants' submissions consisted of ex parte legal argument and affidavits of counsel for CCOC, and sought to influence the Zoning Administrator not to grant the certificate. The arguments were unsound, and known to be so, and the affidavits contained false and irrelevant information. There is no allegation that the allegedly false affidavits were made with knowledge of their falsity. On June 8, 1978, the Zoning Administrator, having received both the above-mentioned submissions and an opinion of the City Attorney, denied the plaintiffs' application on the grounds that the nightclubs had not been lawfully existing prior to the zoning change, because they had been in violation of the Regulations for Entertainers and Employees, and because there had been no authorization in the Zoning Code for such use.

The plaintiffs appealed that decision to the Zoning Board of Appeals. Proceedings were held before that body on three occasions in 1978. At the second of those proceedings, counsel for CCOC again appeared, pursuant to and in furtherance of the agreement of all the defendants, and sought to influence the Board not to grant the certificates by repeatedly speaking out of turn against the plaintiffs. In April 1979, the Board voted three to one to reverse the Zoning Administrator's decision. The Board determined, however, not to issue a certificate, in light of their governing ordinance, which they interpreted to require that the four members vote unanimously before directing any action.[1] The plaintiffs appealed the failure of the Board to issue the certificate to the Circuit Court for Dane County, pursuant to § 62.23(7)(e), Wis.Stats. That case remains pending.

### B. *Pritchard's Citizen's Complaint.*

The second municipal proceeding in which the plaintiffs allege the defendants conspired to do them harm was initiated on June 5, 1979, when the defendant Pritchard, again in furtherance of the conspiracy, filed a citizen's complaint against the plaintiffs' businesses, pursuant to § 176.11, Wis.Stats., and § 9.11(12), Madison General Ordinances, alleging past violations of city ordinances and current violations of the Zoning Code in an attempt to moot or otherwise interfere with the state court proceedings. That complaint was acted upon by the Alcohol License Review Committee (ALRC) of the City of Madison, an advisory body to the Common Council, on June 11, 1979. It directed the City Attorney and City Clerk to give the plaintiffs notice of a license revocation hearing before the Common Council.

The Common Council met the next day and amended the city ordinances to provide that hearings on citizens' complaints such as that filed by Pritchard would no longer be heard by the entire Council, but rather would be before ALRC or a special committee of the Common Council itself. The Council then amended the resolution of the ALRC to provide that Pritchard's complaint would be heard by a special committee appointed by the Mayor. The Mayor appointed the defendant Stewart to the Special Committee. In furtherance of the goals of the conspiracy, Stewart did not decline the appointment to the Committee although she was opposed to the continuation of the plaintiffs' business. The Special Committee subsequently met, but took no action other than to stay its proceedings until after the judgment was rendered in the pending suit against the Zoning Board of Appeals in the state courts. The Committee has taken no other action since the stay.

---

1. The pertinent part of that ordinance provides:
    (d) *Findings Of The Zoning Board Of Appeals.* The Zoning Board of Appeals, upon its findings, shall render a decision on the appeal within a reasonable time. The Board, upon the concurring vote of four (4) members, may reverse or affirm, wholly or partly, or may modify the order, requirements, deci-

sion or determination appealed from, and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the office of the Zoning Administrator, and may issue or direct the issue of a permit.
    § 28.12(7)(d), Madison General Ordinances.

## C. The Plaintiffs' Liquor License Renewals.

The third municipal proceeding concerning which the plaintiffs allege the defendants conspired to do them injury, was the plaintiffs' application for renewal of the clubs' liquor licenses to the ALRC of the City of Madison. The plaintiffs allege that in furtherance of the ongoing conspiracy to suppress nude dancing at the plaintiffs' clubs, the defendant Stewart and counsel to CCOC appeared at the ALRC meeting convened to consider the annual renewal of the plaintiffs' liquor licenses, and addressed the ALRC, in violation of applicable rules of procedure, in an attempt to cause the ALRC to recommend nonrenewal of the licenses to the Common Council. The ALRC did recommend nonrenewal to the Council, and Pritchard, counsel for CCOC, and others all urged nonrenewal during the public hearing portion of the Council meeting convened to consider the ALRC recommendation. Stewart argued and voted against renewal, but the Common Council voted to renew the plaintiffs' licenses. The plaintiffs' licenses have been renewed annually since then.

The complaint concluded by alleging that the above activities violated 42 U.S.C. §§ 1983, 1985(2), and 1985(3), and that as a result the plaintiffs had suffered monetary losses and mental distress. The plaintiffs sought actual damages of $100,000 and punitive damages of $150,000. They also sought injunctive relief prohibiting the defendants from further attempts to suppress the nude dancing at the plaintiffs' clubs and from further violation of the plaintiffs' constitutional rights. The defendants moved to dismiss the complaint, which had been amended twice to conform its allegations to facts revealed in discovery, for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). Stewart moved in the alternative for summary judgment. The district court granted the defendants' motion to dismiss, and further found that the action was "at least frivolous and unreasonable," and awarded the defendants attorney's fees. The plaintiffs appeal from the judgment entered by the district court.

## II. THE PLAINTIFFS' § 1983 CLAIM

In rejecting the plaintiffs' § 1983 claim, the trial court judge determined that the complaint established that neither the plaintiffs' expressive activities nor their business had been interrupted or curtailed, and further that the allegations did not establish any inference that any future loss would violate the plaintiffs' Fourteenth Amendment rights or, if such violation did occur, that it would be caused by the defendants' activities. She concluded that the plaintiffs had failed to show any actual deprivation of a constitutional right by the defendants, and therefore had failed to state a claim under 42 U.S.C. § 1983. The plaintiffs contend that the court erred in so ruling, and that § 1983 does not require by its terms that a person be deprived of rights, but rather only that a person be "subjected to" the deprivation of rights, which includes a presently existing actual threat of deprivation. Because deprivation of the plaintiffs' right to free speech and deprivation of property without due process are among the alleged goals of the defendants' conspiracy, and because the conspiracy has succeeded in burdening the exercise of plaintiffs' rights by imposing legal fees upon the plaintiffs in the above municipal proceedings, the plaintiffs argue such a threat exists. They further contend that Stewart's presence on the Special Committee is an ongoing actual deprivation of their right to due process in connection with their liquor licenses and business.

Analysis of a § 1983 claim is two-step. First the court must discover whether the defendants' acts operated to deprive the plaintiff of any constitutional rights. Then the court must determine whether the defendants acted under color of state law. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Brucar v. Rubin*, 638 F.2d 987, 990 (7th Cir. 1980).

## A. Deprivation of a Constitutional Right.

■ The first inquiry in any § 1983 suit is whether the plaintiff has been deprived

of a right secured by the Constitution and laws of the United States. *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980), *quoting Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Furthermore, the complaint must allege an actual deprivation of rights resulting from the defendants' acts. *Hampton v. Hanrahan*, 600 F.2d 600, 622, 624–25 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 540 n.2 (7th Cir. 1975); *Egan v. City of Aurora*, 291 F.2d 706, 708 (7th Cir. 1961); *Jennings v. Nester*, 217 F.2d 153 (7th Cir. 1954), *cert. denied*, 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281 (1955). The mere possibility of remote or speculative future injury or invasion of rights will not suffice. *Olitsky v. O'Malley*, 597 F.2d 295, 298–99 (1st Cir. 1979); *Joiner v. City of Dallas*, 380 F.Supp. 754, 778 (N.D. Tex.1974), *aff'd*, 419 U.S. 1042, 95 S.Ct. 614, 42 L.Ed.2d 637; *Raitport v. Provident National Bank*, 451 F.Supp. 522, 530 (E.D.Pa. 1978); *see Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 1046, 55 L.Ed.2d 252 (1978) (purpose of § 1983 is to create a species of tort liability for those injured by deprivation of a constitutional right; held, deprivation must cause actual injury to merit award of compensatory damages).

■ The complaint does not allege that the plaintiffs' expressive activity has been interrupted, and, indeed, the plaintiffs have conceded at oral argument that the nude dancing continues as ever at their two clubs. Nor have the plaintiffs been deprived of their liquor licenses. The allegations of the complaint are clear that despite the defendants' alleged interference, the plaintiffs' licenses have been renewed annually and the business of the two clubs continues. The legal fees expended by the plaintiffs in the administrative proceedings cannot qualify as a constitutional injury absent a showing of deprivation of constitutional magnitude. The terms of the complaint do not demonstrate how the plaintiffs have incurred additional legal expenses by dint of defendants' efforts, since the plaintiffs were statutorily required to

appear before both the ALRC and the Madison Common Council for license renewal in any event. The plaintiffs do not have a constitutional right to be unopposed at such hearings, which are held precisely for the purpose of determining the propriety of license renewal, and are therefore designed to elicit and evaluate the reactions, comments, and complaints of Madison citizens. Furthermore, because citizen participation in such proceedings is safeguarded by the First Amendment right to petition, it is absolutely privileged from the type of attack these plaintiffs now seek to mount upon it. *See Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342–46 (7th Cir. 1977), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467.

To the extent Stewart, Pritchard, and other alleged coconspirators are charged to have submitted false affidavits or unsound arguments in the nonconforming occupancy or license renewal proceedings, such activity is not an injury of the requisite magnitude to support a § 1983 claim. *Sarelas v. Sheehan*, 326 F.2d 490 (7th Cir. 1963), *cert. denied*, 377 U.S. 932, 84 S.Ct. 1334, 12 L.Ed.2d 296; *Bartlett v. Weimer*, 268 F.2d 860, 862 (7th Cir. 1959), *cert. denied*, 361 U.S. 938, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960); *Johnson v. Stone*, 268 F.2d 803, 804 (7th Cir. 1959).

Nor can we find a constitutional deprivation in the plaintiffs' final contention, that Stewart's presence on the special committee to hear Pritchard's complaint constitutes an ongoing due process deprivation. Keeping in mind that neither the plaintiffs' expressive nor business activities have been interrupted, we note that the committee's only action to date has been to defer action pending resolution of the state court proceeding on the certificate of nonconforming use, in which the same issues are apparently involved. There is thus little imminent danger of deprivation without due process. Furthermore, the allegations of the complaint establish that the committee's role is only advisory, and that any decision on Pritchard's complaint will be rendered by the Council as a whole. Because the injury complained of thus remains speculative,

tentative, and hypothetical, this ground for relief also falls short of establishing the requisite deprivation of a constitutional right to merit § 1983 relief.

The plaintiffs contend that the threat of deprivation which the defendants' conduct generates is sufficient to give rise to a case or controversy meriting § 1983 intervention by this court, relying on several cases in which courts have granted relief based upon defendants' activity which has threatened to deprive plaintiffs of rights but has not yet actually done so. They cite *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Grandco Corp. v. Rochford*, 536 F.2d 197 (7th Cir. 1976); *National Association of Theatre Owners v. Motion Picture Commission*, 328 F.Supp. 6 (E.D. Wis.1971); *Reichenberger v. Warren*, 319 F.Supp. 1237 (W.D.Wis.1970); *Hosey v. Club Van Cortland*, 299 F.Supp. 501 (S.D.N.Y.1969); and *Jewish War Veterans v. American Nazi Party*, 260 F.Supp. 452 (N.D. Ill.1966). None of the cited cases, however, is applicable to the present situation.

In *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), the plaintiff was a Jehovah's Witness who had been arrested and fined three times for painting over the words "Live Free or Die" on his New Hampshire license plates. In granting the plaintiff injunctive relief under § 1983 from further state criminal prosecution, the Court noted that to justify such relief there must be "exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights." *Id.* at 712, 97 S.Ct. at 1434. The Court concluded that a situation in which three successive prosecutions were undertaken against the plaintiff in the space of five weeks warranted injunctive intervention, and pointed out that, "[t]his is quite different from a claim for federal equitable relief when a prosecution is threatened for the first time. The threat of repeated prosecutions in the future ... and the effect of such a continuing threat on the ability to perform the ordinary tasks of daily life which require an automobile, is sufficient to justify injunctive relief." *Id.* Obviously the dangers envisioned by the

*Wooley* Court are not present here: there has been no interruption or state-imposed burden on the plaintiffs' First Amendment rights, nor has there been any allegation that the defendants' activities will threaten the plaintiffs' abilities to carry on the daily functions of life.

In *Grandco Corp. v. Rochford*, 536 F.2d 197 (7th Cir. 1976), the plaintiffs were motion picture exhibitors who challenged a municipal ordinance under which they were denied licenses to operate. The plaintiffs in *Grandco* all had been subjected either to criminal prosecution (over 100 cases had been filed against one plaintiff within the space of a year), or the denial of a license application. Here, however, the plaintiffs have not been prosecuted, or threatened with prosecution, and their licenses have continually been renewed. In *National Association of Theatre Owners v. Motion Picture Commission*, 382 F.Supp. 6 (E.D.Wis. 1971), the ordinance challenged by the plaintiffs had already become effective and operated as a scheme of prior restraint, and in *Reichenberger v. Warren*, 319 F.Supp. 1237 (W.D.Wis.1970), the plaintiff had already been arrested. These cases demonstrate that a far more intrusive burden is required to have actually been thrust upon plaintiffs before § 1983 intervention is warranted.

While language in *Hosey v. Club Van Cortland*, 299 F.Supp. 501 (S.D.N.Y.1969), initially seems to offer support for the plaintiffs' position, closer examination of its facts reveals its inappropriateness. The plaintiff in *Hosey* alleged that his landlord was about to evict him in retaliation for exercise of his First Amendment rights. A state court refused to enjoin the eviction, and the plaintiff had received a seven-day notice to vacate. The federal district court preliminarily remarked that a mere threat of deprivation of a constitutional right was a sufficient basis for relief, relying upon *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In *Dombrowski*, however, the plaintiffs had already been arrested and indicted and their property seized by the police. It does not, there-

fore, support the *Hosey* dictum. Furthermore, the *Hosey* court concluded that because of the possible availability of a defense to the threatened state court action, "the threat of a constitutional violation is not sufficiently strong" to warrant § 1983-based injunction. 299 F.Supp. at 507. *Hosey* is thus not only based upon inappropriate interpretation of precedent, but furthermore fails even under its own relaxed standard of injunctive availability to support the plaintiffs' position in the instant case, for the *Hosey* plaintiff faced a much more immediate and concrete threat of deprivation than the hypothetical infringements the plaintiffs conjure here.

The continuing validity of *Jewish War Veterans v. American Nazi Party*, 260 F.Supp. 452 (N.D.Ill.1966), in which the district court enjoined a threatened Nazi march, is called in to question by *Collin v. Smith*, 578 F.2d 1197 (7th Cir. 1978), *cert. denied*, 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264, which forbade interference with such a march barring imminent danger of grave substantive evil.

The plaintiffs have thus failed to cite any applicable precedent for granting injunctive or monetary relief under 42 U.S.C. § 1983 in the present posture of this case. Because the plaintiffs have failed to establish the presence of the threshold injury requirement, we need not reach any issue of whether the allegations provide sufficient ground upon which to base a finding of state action. Nor do we need decide to what extent the defendants' acts are protected by the doctrine of legislative and derivative immunity recently restated in *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 611–15 (8th Cir. 1980), or the precise degree to which the defendant's conduct would be privileged under the First Amendment, *see Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342–46 (7th Cir. 1977), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467.

## III. THE PLAINTIFFS' § 1985 CLAIMS.

The complaint also charges that the defendants' activities violated 42 U.S.C. § 1985(2) & (3), and alleges that the defendants conspired both to obstruct the due course of justice, and to deprive the plaintiffs of equal protection of the laws, by interfering in the city administrative proceedings or otherwise seeking to close the plaintiffs' clubs.

Although the district court disposed of these claims without reaching the issue of injury or deprivation, it is undisputed that injury to persons or property, or deprivation of a constitutional right is an indispensable element of a claim under § 1985. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Bellamy v. Mason's Stores, Inc.*, 368 F.Supp. 1025, 1028 (E.D.Va.1973), *aff'd*, 508 F.2d 504 (4th Cir. 1974). That portion of the statute which provides relief for the violation of any subsection of § 1985, states:

[I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

In light of our holding, *supra*, that the district court properly determined that the plaintiffs have suffered no injury or deprivation of constitutional rights as long as their expressive activity continues, they retain their liquor licenses, and continue in business, we affirm the dismissal of the § 1985 claims on the ground that the plaintiffs have not alleged the requisite injury or deprivation of constitutional rights. In light of that holding, we need reach no other issues decided by the district court on the question of § 1985 liability.

## IV. THE AWARD OF ATTORNEY'S FEES TO THE DEFENDANTS

The plaintiffs also appeal from the district court's grant of attorney's fees to the

defendants, pursuant to 42 U.S.C. § 1988, which provides for award of attorney's fees to the prevailing party in a suit brought to vindicate rights under §§ 1983 & 1985. In ruling that the prevailing defendants were entitled to attorney's fees, the district court noted that the plaintiffs' suit attacked both the defendants' exercise of the First Amendment rights of speech and petition, and Stewart's exercise of her legislative duties. The court concluded by characterizing the suit as a joke, and as frivolous and unreasonable under the standards for award of attorney's fees to a prevailing defendant articulated by the Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (Award of attorney's fees to defendant under 42 U.S.C. § 2000e–5(k). The same principles apply under § 1988, *see, e. g., Green v. TenEyck*, 572 F.2d 1233, 1243 n.11 (8th Cir. 1978)). The plaintiffs contend the ruling is not supported by a proper finding under the *Christiansburg* standard.

■ The standard of review of a court's award of attorney's fees to the prevailing party under § 1988 is whether the trial court abused its discretion in making or denying the award. *Olitsky v. O'Malley*, 597 F.2d 303, 305 (1st Cir. 1979); *see Christiansburg* at 421, 424. The *Christiansburg* Court laid down the general standard by which such discretion is to be exercised, and stated:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

434 U.S. at 421, 98 S.Ct. at 700.

In seeking to determine whether a suit is frivolous, unreasonable or groundless, courts have focused on several factors. Among those considered are whether the issue is one of first impression requiring judicial resolution, *Christiansburg*, 434 U.S. at 423–24, 98 S.Ct. at 701; whether the controversy is sufficiently based upon a real threat of injury to the plaintiff, *Olitsky*, 597 F.2d at 305; whether the trial court has made a finding that the suit was frivolous under the *Christiansburg* guidelines, and whether the record would support such a finding, *see, e. g., Vorbeck v. Whaley*, 620 F.2d 191, 193 (8th Cir. 1980). Applying these factors to the instant case reveals no abuse of discretion.

■ The plaintiffs contend that this case does present an issue of first impression in an unsettled area of the law, and that an award of attorney's fees will deter "vigorous, innovative lawyering," in the civil rights area. That contention is based upon the plaintiffs' argument that this case presents the issue of whether a classification based upon the exercise of a fundamental right is sufficient to satisfy the class-based animus requirement for a suit under 42 U.S.C. § 1985(3), enunciated in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). However, the case fails because of its threshold inability to allege injury or deprivation of constitutional rights, and thus the assertedly unsettled issue the plaintiffs have raised need not be addressed to dispose of this case. Furthermore, unlike *Olitsky* where the defendants, members of a liquor control commission, sought attorney's fees following dismissal of a somewhat similar claim on justiciability grounds, we find that it was obvious at the outset of this case that the plaintiffs had not suffered injury or deprivation of a constitutional magnitude. 597 F.2d at 306.

We note additionally that although the plaintiffs' failure to state a claim made it unnecessary to reach the question of any defenses, it is quite clear in this circuit that a citizen's exercise of First Amendment rights of speech, assembly, and petitions are absolutely privileged from attack under the Civil Rights Act of 1871. *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342–46 (7th Cir. 1977), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (taxpayer's complaint against IRS agent protected by *Noerr-Pennington* doctrine even if maliciously motivated). The plaintiffs' attack upon and attempt to chill the exercise of

the defendants' rights was thus foreordained to failure even if sufficient injury could have been established. Such a situation is precisely the type of vexatious and harassing suit the award of fees to prevailing defendants was designed to deter.

The trial court explicitly made a finding that this action satisfied the *Christiansburg* criteria. We are convinced there is adequate support for that finding in the record. In disposing of the suit the trial court twice noted the chilling effect such actions were likely to have on the exercise of defendants' (and others similarly situated) First Amendment rights. Particularly in light of the Supreme Court's repeated indications that nude dancing in places which sell liquor is a highly appropriate subject for legislative regulation, *New York State Liquor Authority v. Bellanca*, —— U.S. ——, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), the plaintiffs' attempt to stifle citizens' efforts to influence or implement such regulation by threatening the exercise of such rights with burdensome litigation is particularly unreasonable and groundless.

Furthermore, despite repeated objections by the defendants the plaintiffs engaged in extensive pretrial discovery, imposing additional burdens upon the defendants' time and finances. In *Olitsky* the First Circuit specifically tagged this type of behavior as symptomatic of harassment which the award of fees to defendants was intended to deter. 597 F.2d at 305–06.

We therefore find no abuse of discretion in the trial court's award of attorney's fees to the prevailing defendants.

Affirmed.