37 F.3d 1216
 Medicare & Medicaid Guide P 42,760
SHERWIN MANOR NURSING CENTER, INC., Plaintiff-Appellant,
v.
Judith McAULIFFE; Charles DeCuirre; Yolanda Pepper; JoAnn
Serpico; Fay Chin; and Patricia Best,
Defendants-Appellees.
 No. 93-2625.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 11, 1994.
Decided Oct. 6, 1994.
 
 Howard M. Hoffman, James W. Marks, Holleb & Coff, Chicago, IL, Nathan Lewin (argued) and Niki Kuckes, Miller, Cassidy, Larroca & Lewin, Washington, DC, for plaintiff-appellant.
 Gary L. Starkman (argued), and Mary L. Smith, Ross & Hardies, Chicago, IL, for defendant-appellee.
 Before CUDAHY and FLAUM, Circuit Judges, and SHARP, District Judge.*
 CUDAHY, Circuit Judge.
 
 
 1
 Sherwin Manor Nursing Center, Inc. (Sherwin), alleges that Illinois state licensing officials falsely cited the facility and discriminated against it because Sherwin's owners are Jewish. It contends that the officials' actions denied Sherwin both the equal protection of the laws in violation of the Fourteenth Amendment and interfered with its right to the free exercise of religion in violation of the First Amendment. The district court dismissed Sherwin's Sec. 1983 complaint for failure to state a claim. We reverse.
 
 I.
 
 2
 Sherwin is a licensed long-term nursing care facility, owned and operated by orthodox Jews and serving a primarily Jewish clientele. Historically, Sherwin had always garnered high marks in the annual licensure and certification survey by the Illinois Department of Public Health (Department). In December 1991, however, the defendants--six surveyors from the Department--purported to find multiple violations based on a two-week survey of the facility. The defendants then compiled a 124-page report, most of which included, Sherwin claims, "false, fabricated and meritless findings." Complaint p 34. According to Sherwin, the defendants erroneously found that Sherwin's facility lacked no-smoking signs, that its records were unavailable, that it lacked a quality assurance program, that its facility was "thick" with soil and smelled of urine, that the menu did not provide a varied diet because it did not include pork and that residents were not given a program of activities. The report noted 28 federal violations and at least 40 state violations. The submission of the allegedly biased survey immediately triggered the initiation of federal decertification proceedings.
 
 
 3
 Sherwin contends that the findings were based not on fact but on the surveyors' religious prejudice. Sherwin alleges, as evidence of the defendants' anti-Semitic animus, that the defendants made the following insulting and offensive statements:
 
 
 4
 "They are Jews, you can't trust them."
 
 
 5
 "She's a Jew and a liar--you can't trust her."
 
 
 6
 "These Jews, they hire Pollacks who can't read or speak English."
 
 
 7
 "These Jews, they don't tell anyone they have a Kosher kitchen."
 
 
 8
 "They are terrible, vicious, rotten people."
 
 
 9
 At the conclusion of the survey, Sherwin and its attorneys met with the supervising representatives of the Department and presented taped, documentary and photographic evidence establishing that most of the defendants' findings were erroneous.[1] (As alleged, Sherwin thereby bypassed the opportunity to respond in writing to the Department's Quality Assurance Division.) The Department then withdrew 73 pages of the surveyors' findings, unconditionally renewed Sherwin's state license and recommended to the federal authorities that Sherwin be unconditionally recertified. All findings that would have comprised state violations were withdrawn, as were all serious federal violations.
 
 
 10
 On October 2, 1992, Sherwin filed a two-count complaint under 42 U.S.C. Sec. 1983 and Sec. 1985(3) seeking, on each count, actual damages, punitive damages, costs and attorneys' fees. Sherwin based these claims on theories of due process, equal protection, free exercise and conspiracy. The district court on March 31, 1993, dismissed the complaint under Fed.R.Civ.P. 12(b)(6), holding that Reichenberger v. Pritchard, 660 F.2d 280 (7th Cir.1981), and Easter House v. Felder, 910 F.2d 1387 (7th Cir.1990) (en banc), cert. denied, 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991), required dismissal. Most critically, the district court found that Sherwin had not suffered an actual constitutional injury. The court noted that Sherwin had not experienced any business interruption as a result of the surveyors' actions. Its operating license and federal certification remained intact, and most of the alleged violations were withdrawn by the Department. Memorandum of March 31, 1993 at 8. The court also noted that the only tangible injury suffered by Sherwin was the cost of defending itself before the Quality Assurance Division of the Department, which according to the court did not rise to the level of a constitutional injury "in a valid Sec. 1983 claim." Id.[2] Absent a showing of injury, the court held that the legal fees and costs incurred by Sherwin were not recoverable as compensatory damages.
 
 
 11
 Sherwin then moved under Rule 59(e) to amend the order dismissing the complaint, asking the district court to reconsider the equal protection and free exercise claims. The court denied the motion, underscoring again the absence of an injury of constitutional magnitude. The court also concluded that Sherwin had not shown that it was treated differently than other similarly situated facilities since violations lodged against nursing homes were automatically reviewed by the Department and this review provided all with a level playing field.
 
 
 12
 Sherwin, in its appeal of the district court's dismissal, has discarded its due process theories and instead relies upon the equal protection, free exercise and Sec. 1985(3) conspiracy claims.
 
 II.
 
 13
 We review the grant of a motion to dismiss de novo, accepting "the truth of all well-pleaded allegations and making all possible inferences in favor of the plaintiff." Wroblewski v. City of Washburn, 965 F.2d 452, 453 (7th Cir.1992) (quoting Prince v. Rescorp Realty, 940 F.2d 1104, 1106 (7th Cir.1991)). Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). Further, a court may not, in cases under Sec. 1983, apply a pleading standard that is more stringent than the notice pleading required by the Federal Rules. Leatherman v. Tarrant County Narcotics Unit, --- U.S. ----, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).
 
 A. Deprivation of Constitutional Magnitude
 
 14
 The crux of the district court's analysis under each of the three theories before us on appeal is that Sherwin's claims failed to demonstrate injuries of "constitutional magnitude." Without such an injury, the court reasoned, Sherwin could not recover attorneys' fees as compensatory damages. See Reichenberger, 660 F.2d at 285 ("legal fees expended by the plaintiffs in the administrative proceedings cannot qualify as a constitutional injury absent a showing of deprivation of constitutional magnitude"). As indicated, the district court purported to base its reasoning on our decisions in Easter House and Reichenberger. In Easter House, a private adoption agency brought a Sec. 1983 action against a former employee and officials of a state licensing agency, alleging a conspiracy to deprive it of its operating license. Easter House's only alleged injuries were the cost of answering the questions of the licensing agency and of making files available to it. Easter House, 910 F.2d at 1407. We concluded that neither of these "injuries" rose to the level of a procedural due process deprivation, holding that a party cannot maintain a Sec. 1983 action for denial of procedural due process if the alleged violations are committed by state employees acting in a "random and unauthorized" manner and adequate state remedies are available. Id. at 1408.
 
 
 15
 In Reichenberger the plaintiffs owned nightclubs that featured nude dancing, and the defendants, a minister and a member of the Common Council, allegedly conspired to eliminate the nude dancing. The complaint asserted that the defendants attempted to interfere in various municipal administrative proceedings in order to revoke the plaintiffs' liquor licenses or to make the cost of renewing the licenses prohibitively expensive. Id. at 282. As a result, the plaintiffs alleged both an abridgment of their free speech rights and a procedural due process claim--in that they were deprived of a property interest without due process.[3] The Reichenberger court, however, found that the complaint did not allege either a procedural due process or a First Amendment injury, since the plaintiffs' expressive and business activities were not interrupted or curtailed and since the defendants' opposition to Reichenberger's activities did not require the plaintiffs to respond to inquiries to which they were not otherwise required to respond. Thus, we affirmed the dismissal of the complaint, noting the plaintiffs' "threshold inability to allege injury or deprivation of constitutional rights." Id. at 288. Reichenberger stands for the proposition that impermissibly motivated government conduct that does not cause "injury" is not actionable.[4] Therefore, an individual who is required to respond to inquiries to which everyone else, in ordinary course, is also required to respond has not suffered a constitutional injury of any kind, even if the relevant government actor makes the customary inquiry animated by impermissible prejudice.
 
 
 16
 By dismissing the complaint because Sherwin never lost its license or certification and because Sherwin took advantage of a post-survey remedy, the district court, it appears, mistakenly blurred the distinction between procedural due process injuries and other constitutional injuries. The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." A procedural due process claim necessitates "a property deprivation of constitutional magnitude" and, of course, one effected without due process. Easter House, 910 F.2d at 1407. In comparison with other constitutional claims such as equal protection or free exercise, a cognizable procedural due process claim does not typically arise until the proceedings are at a mature stage and due process has not been furnished, even though a tangible deprivation has occurred.
 
 
 17
 By contrast, simply because they are not "procedural due process" injuries, other constitutional harms may arise no matter how much process is afforded. For example, an equal protection cause of action accrues whenever a state "den[ies] to any person within its jurisdiction the equal protection of the laws." U.S. Const.Amend. XIV, Sec. 1. To state an equal protection claim, a Sec. 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group. See Shango v. Jurich, 681 F.2d 1091, 1103-04 (7th Cir.1982); Washington v. Davis, 426 U.S. 229, 247-48, 96 S.Ct. 2040, 2051, 48 L.Ed.2d 597 (1976). As this court observed recently in Triad Associates, Inc. v. Robinson, "governmental disregard of the fundamental dictate of equal treatment is the beginning and end of the equal protection inquiry." 10 F.3d 492, 500 (7th Cir.1993).[5]
 
 
 18
 Sherwin presents a cognizable equal protection claim since it alleges that it was subjected to differential treatment by the state surveyors based upon the surveyors' anti-Semitic animus. The district court incorrectly extended the due process injury requirement of Easter House to all Sec. 1983 cases. The defendants' anti-Semitic remarks may not by themselves give rise to an equal protection action by Sherwin. See Bell v. City of Milwaukee, 746 F.2d 1205, 1259 (7th Cir.1984) ("derogatory references to racial or ethnic backgrounds by themselves obviously do not rise to the level of a constitutional violation"). However, such verbal abuse accompanied by the imposition of a special administrative burden forms the basis of an equal protection claim. Further, unlike the plaintiffs in Reichenberger, Sherwin does have a constitutional right not to endure the complained of administrative burden; the state survey alleged by Sherwin was in no sense "ordinary" (a description that suggests relatively minor evaluation "errors" by the defendants) but, as alleged, amounted to a malicious broadside that so threatened Sherwin's interests that it prompted the nursing home to resort to the extraordinary measure of hiring attorneys and appealing directly to supervisors in the Department, rather than awaiting review by the Department's Quality Assurance Division.
 
 
 19
 The Ninth Circuit, in Flores v. Pierce, 617 F.2d 1386 (9th Cir.1980), cert. denied, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980), reached a similar conclusion. In Flores, two Mexican-Americans attempted to open a restaurant and bar in a town that they anticipated would cater in large part to Mexican-Americans. They applied for a liquor license to the Department of Alcoholic Beverage Control of the State of California (ABC), prompting an official protest from the town's police chief, mayor and city council. Id. at 1388. Under California law at that time, when a city chose to protest a liquor license application, that protest operated to block issuance of the license until a hearing was held. The Floreses' license was initially denied but was later granted by the ABC Appeals Board. The Floreses then brought suit for damages under 42 U.S.C. Sec. 1983. The court found that the defendants violated the Floreses' equal protection rights by discriminating against them on the basis of race or national origin. Id. at 1390.
 
 
 20
 Like Sherwin, the plaintiffs in Flores were ultimately made whole: the Floreses in the end received the liquor license. Nonetheless, the Ninth Circuit held that there had been a sufficient allegation of injury:
 
 
 21
 The violation here consisted not in the ABC's initial denial of the license, but in the policy of the city officials to force the applicants to undertake extraordinary measures for its issuance. If the rigors of the governmental or administrative process are imposed upon certain persons with an intent to burden, hinder, or punish them by reason of their race or national origin, then this imposition constitutes a denial of equal protection, notwithstanding the right of the affected persons to secure the benefits they seek by pursuing further legal procedures.
 
 
 22
 Id. at 1391. Just as the Floreses were forced to appeal the denial of their liquor license application, so too was Sherwin forced to take extraordinary measures in appealing the biased report to the Department. Because the claims of the Floreses and Sherwin were properly grounded in equal protection rather than in procedural due process, the fact that further legal procedures cured the violation against property--i.e., furnished due process--affects only the quantum of damages, not whether the plaintiffs' equal protection rights were violated.
 
 B. Damages
 
 23
 Since, unlike the district court, we conclude that Sherwin adequately alleged a constitutional injury in the denial of equal protection, Sherwin presumably has a right to recover its legal fees, should it prevail. This result is consonant with our holding in Kerr v. City of Chicago, 424 F.2d 1134, 1141 (7th Cir.1970):
 
 
 24
 A plaintiff in a civil rights action should be allowed to recover the attorneys' fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant.
 
 
 25
 We, of course, need not decide here whether Sherwin was forced to take extraordinary measures and thus incur attorneys' fees; that question is one for the finder of fact.[6]
 
 III.
 
 26
 Just as the lack of constitutional injury has been erroneously applied to the equal protection claim, this erroneous application may not negate a proper free exercise or Sec. 1985(3) conspiracy claim.[7] The district court also concluded that Sherwin did not state its free exercise claim clearly enough to apprise the defendants of the claims against them, as required by Fed.R.Civ.P. 8 and Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We disagree. As the district court itself noted, the free exercise clause prohibits the imposition of burdens on victims because of their religious beliefs, McDaniel v. Paty, 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978), and Sherwin's complaint clearly alleged anti-Semitic animus and conduct involving, inter alia, criticism of Sherwin's meal offerings because of its adherence to kosher laws. It seems clear enough to us that the complaint put the defendants on notice of a free exercise claim.
 
 
 27
 REVERSED.
 
 
 
 *
 The Honorable Allen Sharp, Chief Judge, of the United States District Court for the Northern District of Indiana is sitting by designation
 
 
 [1]
 Except for the photographs, the evidence presented to the Department's representatives had already been presented to the defendants during the survey and at the "exit conference" at the end of the survey period
 
 
 [2]
 In finding that Sherwin defended itself before Quality Assurance, the district court failed to take the well-pleaded allegations of Sherwin's complaint as true. The complaint alleges that Sherwin communicated and met with supervising representatives of IDPH, not that they responded to the survey in writing as allowed for appeals to Quality Assurance. Compare Complaint p 39 with id. p 21
 
 
 [3]
 The plaintiffs also alleged a Sec. 1985 violation, which prohibits "conspiracies" to interfere with the exercise of constitutional rights. The court's conclusion that the plaintiffs suffered no constitutional injury applied equally to the claims brought under Sec. 1983 and Sec. 1985
 
 
 [4]
 This requirement is simply another way of stating the requirement for standing in federal court that the plaintiff has suffered an "injury in fact." See Lujan v. Defenders of Wildlife, --- U.S. ----, ----, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (to establish standing, plaintiff must have suffered invasion of a legally-protected interest which is concrete and particularized and which is actual or imminent rather than hypothetical)
 
 
 [5]
 The Supreme Court has addressed the related question of when a cause of action accrues in the context of employment discrimination. In Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and Chardon v. Fernandez, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the Court attempted to identify the time when an alleged discriminatory employment practice accrues so as to commence the running of the statute of limitations. In Ricks, the complaint alleged employment discrimination on the basis of national origin in violation of Title VII and 42 U.S.C. Sec. 1981; in Chardon, the suit alleged discrimination on the basis of First Amendment political activities under 42 U.S.C. Sec. 1983. The Court held in each case that the proper focus is upon the time of the discriminatory act rather than the time at which the consequences of the act become evident and painful. Ricks, 449 U.S. at 258, 101 S.Ct. at 504; Chardon, 454 U.S. at 8, 102 S.Ct. at 29. Thus, the Court concluded that the cause of action accrued when the employee was notified of the alleged discriminatory discharge and not when the employee was terminated
 In contrast to Ricks and Chardon, the accrual analysis is altogether different when the violation is predicated upon a procedural due process claim. In a case recently decided by this court, Lawshe v. Simpson, 16 F.3d 1475 (7th Cir.1994), we held that a claim for deprivation of public employment without due process accrues on the actual termination of employment and not on the date on which the plaintiff is notified of the termination. Id. at 1480. In Lawshe as in Reichenberger and Easter House, the unconstitutional act was the deprivation, without procedural due process, of a property interest: the continuation of one's job or business. In Ricks and Chardon, as in the instant case, the unconstitutional act was the discriminatory act itself.
 
 
 [6]
 We note, however, that the Flores court affirmed a $48,500 damage award for the plaintiffs that included a calculation for "additional attorneys' fees." Flores, 617 F.2d at 1392. The costs were "additional" because they were incurred in the effort "to undertake extraordinary measures" for the issuance of the license against the opposition of the state officials
 
 
 [7]
 Both claims arise no matter how much process is afforded and thus they are complete without respect to the availability of due process