799 F.2d 1152
 41 Fair Empl.Prac.Cas. 1054,
41 Empl. Prac. Dec. P 36,415, 55 USLW 2166
 Lorraine LeBEAU, et al., Plaintiffs,
and
Equal Employment Opportunity Commission,
Plaintiff-Intervenor-Appellant,
v.
LIBBEY-OWENS-FORD COMPANY, An Ohio Corporation, and Local
19, United Glass and Ceramic Workers, Defendants-Appellees.
 No. 85-1242.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 13, 1985.
Decided Aug. 22, 1986.
As Modified on Denial of Rehearing and Rehearing En Banc
Jan. 7, 1987.*
 
 Mark S. Flynn, Office of General Counsel, Appellate Services, E.E.O.C., Washington, D.C., for plaintiff-intervenor-appellant.
 Terrence E. Kiwala, Rooks, Pitts & Poust, Keith C. Hult, Matkov, Griffin, Parsons, Salzman & Madoff, Chicago, Ill., for defendants-appellees.
 Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 CUDAHY, Circuit Judge.
 
 
 1
 The Equal Employment Opportunity Commission ("EEOC") appeals from an order of the district court granting Libbey-Owens-Ford Company ("LOF") and Local 19, United Glass and Ceramic Workers ("Local 19") the attorneys' fees they incurred defending this Title VII lawsuit.[1] We reverse.
 
 
 2
 * The factual background and complicated procedural history of this protracted litigation, now in its fifteenth year, are set forth in detail in our 1984 opinion disposing of the EEOC's appeal on the merits. LeBeau v. Libbey-Owens-Ford Co., 727 F.2d 141 (7th Cir.1984) (the "1984 Appellate Opinion"). We provide here only those facts that are necessary to understand the issues now before us.
 
 
 3
 This case has revolved around the impact of Title VII on pre-existing state "protective" labor legislation, which regulated the conditions under which women could work. From 1909 until 1970, when it was declared unconstitutional, Caterpillar Tractor Co. v. Grabiec, 317 F.Supp. 1304 (S.D.Ill.1970), Illinois had such a protective statute in effect. Called the Illinois Female Employment Act, it provided that women could not be employed in factory work for more than eight hours in any one day or more than forty-eight hours in any one week. Laws 1909, p. 212, Sec. 1 (as amended); Ill.Rev.Stat. ch. 48, Sec. 5 (1969).[2] The act was enforced with criminal penalties. On the other hand, Title VII provides that it is an unlawful employment practice for an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex...." 42 U.S.C. Sec. 2000e-2(a)(2). Virtually the same proscription applies to labor organizations. Id. Sec. 2000e-2(c)(2). Thus, when Title VII became effective a conflict arose as to the application of the federal in relation to the state law.
 
 
 4
 In November 1965 the EEOC issued the following guidelines, stating its position on the conflict:
 
 
 5
 The Commission does not believe that Congress intended to disturb such laws and regulations which are intended to, and have the effect of, protecting women against exploitation and hazard. Accordingly, the Commission will consider limitations or prohibitions imposed by such state laws or regulations as a basis for application of the bona fide occupational qualification exception. However, in cases where the clear effect of a law in current circumstances is not to protect women but to subject them to discrimination, the law will not be considered a justification for discrimination. So, for example, restrictions on lifting weights will not be deemed in conflict with Title VII except where the limit is set at an unreasonably low level which could not endanger women.
 
 
 6
 (1) An employer, accordingly, will not be considered to be engaged in an unlawful employment practice when he refuses to employ a woman in a job in which women are legally prohibited from being employed or which involve duties which women may not legally be permitted to perform because of hazards reasonably to be apprehended from such employment.
 
 
 7
 (2) On the other hand, an employer will be deemed to have engaged in an unlawful employment practice if he refuses to employ or promote a woman in order to avoid providing a benefit for her required by law--such as minimum wage or premium overtime pay.
 
 
 8
 (3) Where state laws or regulations provide for administrative exceptions, the Commission will expect an employer asserting a bona fide occupational qualification pursuant to this paragraph to have attempted in good faith to obtain an exception from the agency administering the state law or regulation.
 
 
 9
 29 C.F.R. Sec. 1604.1(c) (1965); 30 Fed.Reg. 14,927.
 
 
 10
 In August 1969, the EEOC changed its position on state protective legislation and amended its guidelines to state that such laws conflicted with Title VII and could never be the basis for a bona fide occupational qualification exception. See 45 Fed.Reg. 13,367 (August 19, 1969); 29 C.F.R. Sec. 1604.1(b)(2) (1970).
 
 
 11
 LOF operates two plants in Ottawa, Illinois, which make automobile windshields and other automotive glass products. Until 1970, LOF segregated its production workforce by sex, allowing women to work only in "plastics" and "assembly." Women were maintained on a separate seniority list ("Plastic and Assembly Girls") and were subject to a different system for layoff and recall. The most senior female employees worked fulltime in either plastics or assembly; the more junior were maintained on a list, called the "extra board," from which they were called in if a replacement or an extra worker were needed. In late 1969 and early 1970, LOF took steps to eliminate the sex-segregated system at Ottawa. The process was complete by March 1970.
 
 
 12
 Also in March 1970, eleven days after the LOF switch-over was complete, plaintiff LeBeau and other female employees at Ottawa filed a charge with the EEOC alleging sex discrimination at Ottawa. (No such charge had ever been filed while the discriminatory system was in place.) Upon receiving their "right to sue" letter from the EEOC, the women filed this suit in federal district court for the Northern District of Illinois on August 3, 1971. They claimed that the defendants had (1) segregated departments and jobs by sex; (2) maintained sex-segregated seniority lists; and (3) operated sex-segregated systems of job assignment, layoff and recall--all in violation of Title VII. They also alleged continuing gender discrimination and sought both injunctive and monetary relief.
 
 
 13
 In June 1975 the EEOC intervened in this action as a party plaintiff and filed a complaint claiming that the defendants had discriminated and were currently discriminating against female employees at Ottawa by maintaining policies and practices with respect to hiring, assignment, compensation and other terms of employment that denied women equal employment opportunity. Three years later, in October 1978, the EEOC was granted leave to file an amended complaint, which omitted any reference to continuing discrimination and any prayer for relief beyond backpay. In this posture, as a suit for backpay as a result of discrimination between July 2, 1965 and March 1970, the suit survived motions to dismiss and for summary judgment and finally went to trial in October and November 1981. In March 1982 the district court entered judgment for the women plaintiffs on the issue of liability but for the defendants "on the question of back wages."[3] It found for the defendants as against the EEOC on all issues.
 
 
 14
 In the Memorandum Opinion accompanying the order, LeBeau v. Libbey-Owens-Ford Co., No. 71-C-1902 (N.D.Ill. Mar. 31, 1982) (the "1982 District Court Opinion"), the district court acknowledged that the plaintiffs had made out a prima facie case of gender discrimination, id. at 14. It noted that the defendants raised as affirmative defenses their reliance upon the EEOC's 1965 guidelines and the terms of the Illinois protective statute and it found that they had met their rebuttal burden:
 
 
 15
 I conclude that the defendants have proved by a preponderance of evidence reliance upon the Illinois laws in support of their practices, and reliance upon the guidelines of E.E.O.C. itself in continuing their reliance upon the state law. I conclude that the government is equitably estopped from claiming that the defendants violated the Act of 1964, and that the individual plaintiffs, although they established a prima facie case under the Act, are equitably estopped from asking [sic] damages, in the form of claimed back wages or any other form.
 
 
 16
 Id. at 30.
 
 
 17
 The EEOC appealed this ruling. It argued that the defendants were not entitled to a defense of good faith reliance upon the Illinois protective statute because they had not shown that the full range of their discriminatory practices was mandated by the statute. To deny backpay in the absence of an actual conflict, it asserted, would frustrate the policies of Title VII. It also argued that the defendants were not entitled to a defense of good faith reliance upon the EEOC guidelines because (a) their discriminatory employment practices were not authorized by the guidelines and (b) they had not proven actual reliance upon the guidelines. We affirmed, finding that the district court had not clearly erred in finding that the defendants had relied in good faith on both the Illinois statute and the EEOC guidelines and rejecting as unreasonable the EEOC's reading of its guidelines as prohibiting the defendants' practices. 1984 Appellate Opinion, 727 F.2d at 147-48.
 
 
 18
 The defendants then returned to the district court seeking attorneys' fees for their defense of this lawsuit at both the trial and appellate levels. The district court granted their fee request,[4] and it is from that order that the EEOC now appeals.
 
 II
 
 19
 Section 706(k) of Title VII, 42 U.S.C. Sec. 2000e-5(k), provides that the trial court may in its discretion allow the prevailing party "a reasonable attorney's fee as part of the costs."[5] A prevailing plaintiff is awarded attorneys' fees unless special circumstances would make the award unjust, but a prevailing defendant will recover fees only upon a showing that "the plaintiff's action was frivolous, unreasonable, or without foundation ... or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22, 98 S.Ct. 694, 700-01, 54 L.Ed.2d 648 (1978). The reason for the distinction is that the policies that favor fee awards to prevailing plaintiffs are not in effect in the case of a prevailing defendant. Id. at 418, 98 S.Ct. at 698; see also Hamilton v. Daley, 777 F.2d 1207, 1211-12 (7th Cir.1985).
 
 
 20
 The decision whether or not to award attorneys' fees is committed to the discretion of the district judge, see, e.g., Eichman v. Linden & Sons, Inc., 752 F.2d 1246, 1249 (7th Cir.1985), and never lightly reversed. We hold here, however, that the trial court abused its discretion when it awarded attorneys' fees to the defendants in this case.
 
 III
 
 21
 In its decision on fees, LeBeau v. Libbey-Owens-Ford Co., No. 71-C-1902 (N.D.Ill. Dec. 17, 1984) (the "1984 District Court Opinion"), the district court relied on our decision in Reichenberger v. Pritchard, 660 F.2d 280 (7th Cir.1981), in ruling on the defendants' application for fees. It relied on four factors that we said were relevant to this inquiry: (1) whether the issue involved in the case was one of first impression requiring judicial resolution; (2) whether the controversy was sufficiently based upon a real threat of injury to the plaintiff; (3) whether the trial court makes a finding that the suit was frivolous under Christiansburg; and (4) whether the record will support such a finding.[6] 1984 District Court Opinion at 3 (citing Reichenberger, 660 F.2d at 288).
 
 
 22
 With respect to the first factor, the district court noted that the case was not one of first impression: there had been other cases concerning the impact of Title VII on state protective legislation, one of them an Ohio case involving a LOF plant in Ohio. 1984 District Court Opinion at 3. Second, the district court noted that there was no real threat of injury to the women because the discrimination had ended before the women brought the suit and well before the EEOC had intervened. Id. at 3-4. As to the third and fourth factors, the district court found it to be the "apex of unreasonableness" for the EEOC to have brought and maintained this suit in light of its 1965 guidelines, which the court had ruled allowed the defendants to maintain their employment practices in order to comply with state law. Id. at 5. We believe that the district court abused its discretion in applying these factors and we do not think that the record supports its characterization of the EEOC's case.
 
 
 23
 When we stated in Reichenberger that it was relevant to consider whether a case was one of first impression, we meant that the novelty of an action might militate against a fee award to a defendant. See Reichenberger, 660 F.2d at 288 (plaintiffs contend that their suit is one of first impression); Christiansburg, 434 U.S. at 423-24, 98 S.Ct. at 701 (same); see also Tarter v. Raybuck, 742 F.2d 977, 987 (6th Cir.1984) (Reichenberger stands for proposition that suit being "in an unsettled area of law ... mitigates [sic] against an award to defendants"), cert. denied, 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). It is an entirely different matter to consider assessing fees because a suit is not clearly one of first impression. To be sure, we will assess fees when "the plaintiff proceeds in the face of an unambiguous adverse prior ruling," Badillo v. Central Steel & Wire Co., 717 F.2d 1160, 1164 (7th Cir.1983), but a large number of cases fall between these two extremes, and this case is one.
 
 
 24
 Raitz v. Libbey-Owens-Ford Co., No. 70-99 (N.D. Ohio 1973), was decided two years before the EEOC intervened in this suit; it dealt with almost identical employment practices at LOF's Toledo, Ohio plant. 1982 District Court Opinion at 20. There, the district court decided that there was no dispute as to any material issue of fact and entered summary judgment for LOF. It framed as the "real issue" of the case "the intention of the defendants in continuing those practices after the effective date of [Title VII]," Raitz, slip op. at 3 (emphasis supplied); nonetheless, it decided as a matter of law that when the employer is on the "horns of a dilemma" it cannot be charged with a violation of Title VII, id.; see also 1984 District Court Opinion at 3.
 
 
 25
 The district court in this case relied on Raitz in holding that the EEOC's suit was frivolous. But, five years earlier, the same court had ruled that the question of the defendants' intent could not be answered as a matter of law. In denying the defendants' motion for summary judgment, the district court explained:
 
 
 26
 The question of whether the defendant Libbey-Owens-Ford's--whether that defendant's good faith reliance on the state protective statute is a bar to damages is a question of fact and cannot be decided as a matter of law. While Section 713(b) of Title VII does exempt a defendant employer from liability for monetary damages, it requires that the defendant employer "plead and prove that the act or omission complained of was done or omitted in good faith." 42 U.S.C. Section 2000(e)(12)(b).
 
 
 27
 In other words, the defendants need to show that they actually acted in good faith. It is not sufficient to establish the existence of the state protective statute to invoke the good faith defense; rather, the defendants would need to show that they in fact knew of and adhered to the requirements of the state protective statute and that any violation of Title VII was unavoidable and a direct result of their adherence to the state protective statute.
 
 
 28
 Hearing on Motion for Summary Judgment (May 23, 1979), Tr. 254-55 (emphasis supplied).
 
 
 29
 At trial, the district court heard evidence relating to the defendants' good faith defense and also heard evidence presented by the EEOC in an attempt to rebut the defense. In its 1982 opinion, the district court explained that
 
 
 30
 [i]n many respects this case and the Raitz case in Ohio are related. They were started about the same time. They involved the same employer, L.O.F., and the same employer conduct between July 2, 1965 and Spring of 1970.... They involved similar provisions of state female protective statutes, and in particular provisions preventing overtime employment of females....
 
 
 31
 1982 District Court Opinion at 20. It noted, however, that Raitz had been dismissed on an early summary judgment motion while this case had become bogged down in a series of procedural and jurisdictional disputes. During the 1970's
 
 
 32
 a number of changes had taken place. The 1972 Amendment to the 1964 Act had been enacted making it possible for E.E.O.C. itself to intervene in these actions, reinforcing the affirmative action nature of the equitable relief made available to complaining plaintiffs, and limiting back pay to two years prior to the filing of the charge with E.E.O.C. seeking administrative relief. In addition, a number of sex discrimination cases involving the question about the state-federal law conflict had been decided and concluded, some after appeal to the courts of appeals, and, in several, after certiorari had been denied by the Supreme Court. Incidentally, in none of these cases had back pay been allowed.... The Supreme Court in a race discrimination case, Albemarle Paper Co. v. Moody, 422 U.S. 405 [95 S.Ct. 2362, 45 L.Ed.2d 280] (1975), had indicated that good faith reliance upon E.E.O.C.'s opinion about these conflicts of law is a defense to back pay.... Under the circumstances plaintiff-intervenor had a right to demand proof of the good faith of defendant's claim of reliance upon its opinions. This is consistent with the provisions of Title VII as amended.
 
 
 33
 1982 District Court Opinion at 21 (emphasis supplied).
 
 
 34
 Given the district court's acknowledgement both pretrial and in its 1982 opinion that Raitz was not dispositive of the issues in this case, we believe that it abused its discretion when it cited the Raitz decision as a factor rendering this suit frivolous. As for the collection of cases that appellees cite, and to which the district court adverts to show that this case was not one of first impression, we can only say that when a trial judge rules that there are facts under which a plaintiff can prevail, it is highly inconsistent for him to later find the suit frivolous because it is foreclosed as a matter of law.[7]
 
 
 35
 As a second factor in favor of awarding fees to the defendants, the trial court found that there was no "real threat of injury" to the women plaintiffs because the discrimination had ended before they brought their suit. The court did not elaborate on what it meant by this. Certainly we did not mean to imply in Reichenberger that there is a distinction between past and prospective injury;[8] damage suits are not by their nature more frivolous than suits for injunctions and we will not assume the district court to have meant this. Cf. Williams v. General Foods Corp., 492 F.2d 399, 406 (7th Cir.1974) (cessation of discriminatory employment practices is no defense to liability). This abbreviated discussion by the district court might instead be a reference to the fact that none of the plaintiffs complained about LOF's employment practices until after those practices had been changed. The district court had in his 1982 decision found for the women on the question of liability but then denied them backpay on the principle that "the defendants having ... established that their reliance both on the Illinois Female Employment Statute and the guidelines of E.E.O.C. was in fact in good faith, [they] ... should not be permitted to reap a financial harvest out of conduct concerning which they never complained until after it was voluntarily discontinued...." 1982 District Court Opinion at 31. Appellees argue that this was a finding by the district court that plaintiffs had not met the burden, discussed in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), of coming forward with evidence that they had either applied for positions from which they were barred or been inhibited from applying by pervasive discrimination. This interpretation would raise the possibility that the women had not really been injured and had merely sought to make a fast buck after the fact.
 
 
 36
 We do not believe, however, that the district court was relying on Teamsters in denying relief.[9] Rather it was recognizing a form of equitable estoppel in denying the women backpay. The district court found for the women on the liability issue: this suggests that it found that they were injured by the defendants' practices. It also found that LOF had relied in good faith on the Illinois statute and EEOC guidelines. If the district court had believed that the women had suffered no cognizable injury, there would have been no need to address the affirmative defenses of good faith reliance. We have held elsewhere that a plaintiff's case that survives a motion for a directed verdict is not a frivolous suit. Soderbeck v. Burnett County, 752 F.2d 285, 295 (7th Cir.), cert, denied, --- U.S. ----, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985). In short, we cannot infer from the district court's 1982 decision a finding that the women had suffered no injury for which they were entitled to sue, and we do not place great weight on the district court's 1984 finding that there was "no real threat of injury" to the plaintiffs.
 
 
 37
 The third and fourth factors upon which the EEOC relied were whether the suit was frivolous, unreasonable and groundless and whether such a finding is supported by the record. The district court's discussion of those factors was as follows:
 
 
 38
 For the EEOC to then join this suit and proceed against the defendants with doubtless unprecedented vigor in light of its own guidelines was, in the opinion of this court, quite unreasonable. As I stated in my ruling of March 31, 1982, "the EEOC in all fairness should not be heard to condemn defendants for having followed its guidelines; and the defendants having further established that their reliance both on the Illinois Female Employment Statute and the guidelines of EEOC was in good faith, the individual plaintiffs should not be permitted to reap a financial harvest out of conduct concerning which they never complained until after it was voluntarily discontinued when EEOC withdrew its approval." In Equal Employment Opportunity Commission v. Pierce Packing Company, 699 F.2d 605 (9th Cir.1982), the EEOC's failure to abide by its own regulations was found in a similar case to be evidence of unreasonableness justifying an award of fees against the EEOC. In that case the court stated:
 
 
 39
 "The EEOC's obvious disregard for such promulgated regulations is the apex of unreasonableness." Id. at 609.
 
 
 40
 I find similarly that for the EEOC to have proceeded with this case in light of its own guidelines was the apex of unreasonableness. The motions of the defendants for attorney's fees against the EEOC must be allowed.
 
 
 41
 1984 District Court Opinion at 4-5.
 
 
 42
 This assessment of the merit of the EEOC's suit seems to us flawed. The characterization of the EEOC's position is distorted and lacks support in the record and too much reliance is placed on the facts as found at trial to support a finding that the suit should not have been brought. Indeed, the fact that the defendants were put to their proof would seem to weigh in the EEOC's favor.
 
 
 43
 When the district court denied the defendants' motion for summary judgment,[10] it did so on the grounds that "defendants would need to show that they in fact knew of and adhered to the requirements of the state protective statute and that any violation of Title VII was unavoidable and a direct result of their adherence to the state protective statute." Hearing on Motion for Summary Judgment (May 23, 1979), Tr. 255. In other words, the district court sent this case to trial on the premise that the EEOC was not simply "condemning defendants for having followed its guidelines" but rather was seeking to establish that defendants were using the guidelines as a pretextual justification for their discriminatory practices. The defendants' motions for a directed verdict at the close of the plaintiffs' case were similarly denied on the ground that, the plaintiffs having made out a prima facie case, the defense must be put to its proof on its affirmative defenses. 1982 District Court Opinion at 6 n. 2 p (5); Tr. 2735.
 
 
 44
 The district court believed the defendants at trial: "Defendants accepted their burden and produced evidence which was not shaken by cross-examination of witnesses or by contradictory evidence, not only that they in fact relied on the published guidelines of the E.E.O.C., but that considering all the circumstances their reliance was in good faith." 1982 District Court Opinion at 22. But Christiansburg warns us against "the understandable temptation to engage in post hoc reasoning by concluding that, because the plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." 434 U.S. at 422, 98 S.Ct. at 700. Of course, we must also be on the lookout for post hoc reasoning on the part of the plaintiff-appellant--that is, a "relitigation" of the suit in an attempt to make it look less frivolous than it was at the time. This is what appellees assert the EEOC is up to here. See Appellee LOF's Brief at 43 ("On this appeal, the EEOC has recreated what it now contends was its position during the case...."). And, although a review of the record convinces us that the EEOC did not always manage this case as wisely as it now claims or as one might wish,[11] it also shows that it did not bring or conduct this suit in a manner that could be labelled "frivolous" or "unreasonable."
 
 
 45
 The EEOC's position remained substantially the same throughout the litigation. It sought to show that LOF's employment practices were not mandated by the Illinois statute in that feasible alternatives would have provided women with better opportunities while maintaining compliance with state law. To this end, it attempted to bring out that LOF had exported to Ottawa the same employment classifications developed in Toledo, Tr. 3063-3100, although these classifications had been created to comply with a stricter Ohio protective statute. Tr. 3071. The EEOC also sought to establish that some of the "male" jobs at Ottawa did not require overtime that would have been illegal for women, Tr. 3106-3110, and that alternative ways of organizing the workforce would have allowed women to work in jobs that did require overtime, Tr. 3143-46. It also sought to demonstrate that LOF did not actually rely on EEOC pronouncements in formulating its employment practices--suggesting that LOF did not conscientiously inquire into the relationship between Tltle VII and state labor law until 1968, when Nancy Raitz brought an EEOC charge against LOF, Tr. 3058-61. The EEOC also tried to bring in evidence to show that LOF stopped the "extra board" system not in reliance upon EEOC's revised guidelines but rather at the behest of the Office of Federal Contract Compliance, Tr. 3125-36. Third, it tried to show that LOF's "good faith" was pretext, eliciting testimony that LOF occasionally worked women over the statutory limit (without paying them overtime wages), Tr. 3528-32; 3874-80, and that LOF never sought to obtain from the State of Illinois an administrative exemption for overtime production work for women, Tr. 3056. Thus, we believe that a review of the record shows that the district court mischaracterized the EEOC's theory of the case as only "condemn[ing] the defendants for having followed its guidelines."[12]
 
 
 46
 The district court also ruled that the defendants were entitled to attorneys' fees for defending a frivolous appeal. It wrote:
 
 
 47
 The EEOC argued on two grounds that the trial court's decision should be reversed. First, that the 1965 guidelines prohibited the employment practices of Libbey-Owens-Ford and second, that the defendants did not rely in good faith on the 1965 guidelines. For all of the reasons stated earlier, the appeal on these issues was as unreasonable as the pursuit of those issues at trial.
 
 
 48
 1984 District Court Opinion at 6. On appeal, the EEOC argued first that the district court had incorrectly concluded the "good faith reliance" issue by inquiring whether LOF in fact used these employment practices as a way to comply with the statute instead of asking whether LOF had to use these practices to avoid violating the statute. Appellants' Merits Brief at 23-36. In light of this "erroneous" analysis, the EEOC contended, denial of backpay would frustrate the goal and purpose of Title VII, in violation of Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Appellants' Merits Brief at 37-38. It also argued that the defendants had not proved their actual reliance upon the 1965 guidelines. Id. at 45-48. Finally, it argued that the 1965 guidelines "did not authorize" defendants' employment practices. Id. at 38-44. It framed this last argument as follows:
 
 
 49
 [I]t is clear that the 1965 EEOC guidelines did not condone defendants' employment practices. On the contrary, the guidelines specifically prohibit sex-segregated job categories, seniority lists and lay-off systems. 29 C.F.R. Sec. 1604.2. Thus, LOF and Local 19 were expressly put on notice that their system for employment of women violated Title VII.
 
 
 50
 As regards state protective laws, the guidelines only sanctioned practices which were specifically mandated by state statute.... [T]he Illinois Female Employment Act, which only prohibited women from working in excess of a certain number of hours, did not require any of defendants' sex-segregated practices.
 
 
 51
 Moreover, even if the Illinois statute could be construed as requiring the defendants' practices, the guidelines put defendants on notice that such conduct would not be considered lawful. The guidelines specifically state that:
 
 
 52
 ... where the clear effect of a law in current circumstances is not to protect women but to subject them to discrimination, the law will not be considered a justification for discrimination.
 
 
 53
 29 C.F.R. Sec. 1604.1(c). Any law which required an employer to restrict women to only one department, classify jobs as male and female, and maintain sex-segregated seniority and layoff systems would clearly have had the effect of subjecting women to discrimination, rather than protecting them. The guidelines provide that compliance with such state laws would not shelter an employer from a finding of discrimination.
 
 
 54
 Id. at 42-43 (footnote omitted). This aggressive reading of the 1965 guidelines was rejected first by the district court and then by this court. The district court found that the guidelines meant that "federal law would not be violated by compliance with state law," 1982 District Court Opinion at 16, and that "if an employer's employment program for women is mandated by or in furtherance of compliance with the female employment practices of the state, such practices may be continued," id. at 29-30. This differed from the EEOC's reading in that it suggested that a practice "in furtherance of" compliance but not "mandated by" state law could nonetheless provide the basis for a bona fide occupational exception. The EEOC argued before us that not all of LOF's practices were "mandated by" state law. Once stripped of that protection, it argued, the practices had to be evaluated under the general proscription of discriminatory employment practices.
 
 
 55
 We responded to this argument in our merits opinion:
 
 
 56
 We believe that the appellants are mistaken when they argue ... that the 1965 guidelines "specifically prohibit sex-segregated job categories, seniority lists and lay off systems. 29 C.F.R. Sec. 1604.2." So they do, but with an important exception directly following in the cited section: "unless sex is a bona fide occupational qualification for the job." In the preceding section ... the guidelines state, with reference to laws protecting women: "Accordingly, the Commission will consider limitations or prohibitions imposed by state laws or regulations as a basis for application of the bona fide occupational qualification exception."
 
 
 57
 1984 Appellate Opinion, 727 F.2d at 148. We then interpreted the guidelines generally to mean that " 'good faith reliance on state female protective laws, such as the Illinois Female Employment Act, constituted a legitimate exception to Title VII....' " Id. (quoting Williams v. General Foods Corp., 492 F.2d 399, 402 (7th Cir.1974)).
 
 
 58
 But our rejection of the EEOC's arguments does not, without more, make them frivolous. The EEOC's interpretation is within the fair meaning of the words of the guidelines. It is not foreclosed by the Supreme Court's decision in Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), in which the Court noted the existence of "a complete but very narrow" immunity for employers who rely in good faith on EEOC interpretations of Title VII, id. at 423 n. 17, 95 S.Ct. at 2374 n. 17, and declined to comment on those courts of appeals cases in which backpay had been denied because of an employer's good faith reliance on state protective legislation, id. at 423 n. 18, 95 S.Ct. at 2374 n. 18.[13] Nor is the EEOC's position irreconcilable with this court's decision in Williams v. General Foods Corp., 492 F.2d 399 (7th Cir.1974).[14] As the EEOC noted in its merits brief to our court, in Williamsthe only challenged practice was the employer's refusal to schedule [female] employees for early morning 'start-up' overtime since such overtime would violate the Illinois statutory limitation on working hours for women.... The primary factor which weighed against backpay in the Williams case was that the challenged discriminatory actions were specifically required by the Illinois statute....
 
 
 59
 Appellants' Merits Brief at 26. General Foods had been, the EEOC concluded, actually on the "horns of a dilemma;" LOF, it argued, had not. Thus, although we rejected the EEOC's appellate position, we do not believe that it was frivolous, unreasonable or without foundation.
 
 IV
 
 60
 For all of the foregoing reasons, we believe that the district court abused its discretion in awarding attorneys' fees to the defendants in this action[15] and thus hold that its 1984 judgment is
 
 
 61
 REVERSED.
 
 
 62
 ESCHBACH, Senior Circuit Judge, dissenting.
 
 
 63
 I respectfully dissent. As the majority recognizes, under 42 U.S.C. Sec. 2000e-5(k), "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). " 'A suit is frivolous if it has no reasonable basis, whether in fact or in law.' " Gekas v. Attorney Registration and Disciplinary Commission, 793 F.2d 846, 850 (7th Cir.1986) (per curiam) (quoting Tarkowski v. County of Lake, 775 F.2d 173, 176 (7th Cir.1985)). I agree with the district court that the EEOC's suit was unreasonable on its facts and as a matter of law, and conclude that the district court's award of $190,631 to Libbey-Owens-Ford Co. ("LOF") and $132,877 to Local 19, United Glass and Ceramic Workers ("Local 19") was a proper exercise of its discretion.
 
 
 64
 * Until 1969 EEOC regulations provided that "the Commission will consider limitations or prohibitions imposed by ... state law or regulations as a basis for application of the bona fide occupational qualification exceptions.... An employer, accordingly, will not be considered to be engaged in an unlawful employment practice when he refuses to employ a woman in a job in which women are legally prohibited from being employed or which involve [sic] duties which women may not legally be permitted to perform because of hazards reasonably to be apprehended from such employment." 29 C.F.R. Sec. 1604.1(c) (1965), superseded, 45 Fed.Reg. 13,367 (1969). Title VII itself recognizes that employment practices "in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission" are immune from liability. 42 U.S.C. Sec. 2000e-12(b); see also Albemarle Paper Co. v. Moody, 422 U.S. 405, 423 n. 17, 95 S.Ct. 2362, 2374 n. 17, 45 L.Ed.2d 280 (1975).
 
 
 65
 The Illinois Female Employment Act prohibited the employment of women for more than 8 hours a day or 48 hours a week. Ill.Rev.Stat. ch. 48, Sec. 5 (1969); 1909 Ill. Laws 212. In 1970 the statute was adjudged to be preempted by Title VII. See Caterpillar Tractor Co. v. Grabiec, 317 F.Supp. 1304, 1308 (S.D.Ill.1970). In our prior opinion on the merits, we explained how LOF complied with the Illinois statute:
 
 
 66
 LOF at all times obeyed the Illinois employment laws against overtime for females. Production of glass by its nature requires a certain amount of overtime. This is apparently because some operations require much more time than others; in order to keep production steady, some operations therefore must be continuous while others need not be; this situation is referred to as "balancing." In order to comply with the Act, women employed full-time were assigned by LOF to work in non-continuous operations, where overtime was less frequently required because operations could be stopped or speeded up as necessity dictated. Overtime was avoided in those operations also by hiring part-time women employees, listing them on an "extra board" in order of seniority, and calling them in for work if replacements (for absentees) or extra production were needed. When called in, part-time women employees had an absolute right of refusal and often exercised that right. Full-time women employees were hired in order of seniority from those on the extra board who wanted full-time work. Under this system LOF was able to employ women and, despite the nature of its production, was able at the same time to comply with the Illinois law against overtime for women.
 
 
 67
 Le Beau v. Libbey-Owens-Ford Co., 727 F.2d 141, 143 (7th Cir.1984) ("Le Beau I ").
 
 II
 
 68
 LOF relied upon the EEOC's regulation to establish its immunity from liability under Title VII. After LOF submitted evidence to support its defense under 42 U.S.C. Sec. 2000e-12(b), the burden of coming forward with evidence to rebut LOF's defense shifted to the EEOC. See Majority Opinion at 1161 n. 12. To rebut LOF's defense, the EEOC unsuccessfully attempted to show that LOF did not act in good faith in segregating its workforce, that its segregated workforce was not in conformity with the EEOC's guideline, and that it did not rely on the EEOC regulations. In my opinion, the complete absence of any reasonable evidence on the part of the EEOC to support its claims demonstrates that the EEOC could not have reasonably believed that it could rebut LOF's defense. I therefore find its suit frivolous.
 
 A. LOF's Alleged Bad Faith
 
 69
 The majority says that the EEOC "tried to show that LOF's 'good faith' was pretext, eliciting testimony that LOF occasionally worked women over the statutory limit (without paying them overtime wages), Tr. 3528-32; 3874-80, and that LOF never sought to obtain from the State of Illinois an administrative exception for overtime production work for women, Tr. 3056." Majority Opinion at 1161. With all due respect, the only testimony of LOF's "bad faith" the EEOC elicited was that on occasions when LOF had exhausted its "extra board," it rarely scheduled women to work overtime. Tr. 3529 (testimony of Dale Ferguson, Director of Industrial Relations at LOF's Ottawa plant).
 
 
 70
 At pages 3874 to 3880 of the transcript, to which the majority also refers, counsel for the EEOC asked William Modesitt, Local 19's former plant president, whether, if LOF's records reflected an instance when a woman worked over the statutory limit, he would have known of it. Modesitt answered that he probably would have heard about it.[1] Counsel's questions, of course, are not evidence and the witness's answers do not establish that a woman actually worked over the statutory limit on even one occasion. Even if the assertions made by counsel for the EEOC are taken as evidence, they add nothing to the testimony that LOF rarely worked women above the statutory limits.
 
 
 71
 The EEOC regulation quoted above also provided that "[w]here state laws or regulations provide for administrative exceptions, the Commission will expect an employer asserting a bona fide occupational qualification pursuant to this paragraph to have attempted in good faith to obtain an exception from the agency administering the state law or regulation." 29 C.F.R. Sec. 1604.1(c)(3) (1965). As the majority notes, to prove LOF's "bad faith," the EEOC sought to establish that LOF did not apply for an exception under the Illinois statute. Majority Opinion at 1161. Nevertheless, the EEOC adduced absolutely no evidence that LOF never applied for such an exception to the Illinois Department of Labor, the agency charged by Ill.Rev.Stat. ch. 48, Sec. 7 (1969), with the duty of enforcing the statute. Indeed, Lester Kramer, LOF's Vice-President for Manufacturing Services, testified that LOF asked for an "exemption for a clerical female to work ten hours twice a month, and that was denied." Tr. 3110-11; see also id. at 2862; Le Beau I, 727 F.2d at 145.[2]
 
 
 72
 Thus, the sum and substance of the EEOC's evidence of LOF's alleged bad faith is that women rarely worked overtime. Contrary to the majority, I believe that the merit of the EEOC's suit must be judged in light of the evidence that the EEOC reasonably believed it could adduce at trial, not by what the EEOC "attempted to bring out" or "tried to show." Majority Opinion at 1161. The EEOC's complete absence of any reasonable evidence that would rebut LOF's good faith defense raises a presumption that the EEOC could not reasonably have believed that it could rebut LOF's defense. The EEOC has not explained its lack of evidence to rebut LOF's evidence of good faith. In my view, it, therefore, was patently unreasonable for the EEOC to argue that LOF acted in bad faith on no other evidence than that women rarely worked overtime.[3]
 
 
 73
 B. Conformity with the EEOC's Written Interpretation
 
 
 74
 The EEOC argued that its "guidelines specifically prohibit[ed] [LOF's] sex-segregated job categories, seniority lists and lay-off systems." EEOC Merits Brief at 42-43. Indeed, it even maintained that LOF's segregated workforce violated the EEOC's regulation "even if the Illinois statute could be construed as requiring the defendant's practices." Id. The EEOC had advanced these arguments in an earlier suit against LOF involving identical employment practices under a similar state statute,[4] and had lost. Raitz v. Libbey-Owens-Ford Co., No. 70-99 (N.D.Ohio Sept. 25, 1973). As the majority acknowledges, a suit is frivolous when "the plaintiff proceeds in the face of an unambiguous adverse previous ruling" or otherwise "is aware with some degree of certainty of the factual or legal infirmity of his claim." Badillo v. Central Steel & Wire Co., 717 F.2d 1160, 1163-64 (7th Cir.1983). After Raitz, the handwriting was on the wall. The EEOC's defeat put the Commission on notice of the legal infirmity of its claims as early as 1973--two years before it intervened in the instant case. I, therefore, believe that the EEOC's prosecution of this case was unreasonable as a matter of law, and, hence, frivolous.
 
 
 75
 The majority, however, seeks to discount the EEOC's defeat in Raitz. Noting that summary judgment for LOF was granted by the Raitz court but denied by the court below, it reasons that the denial of summary judgment means that the EEOC's suit must have been meritorious. See Majority Opinion at 1157-58. I respectfully disagree.
 
 
 76
 That a defendant's motion for summary judgment is denied and a case is tried in no way suggests that the plaintiff's suit is not frivolous. Summary judgment, of course, must be denied whenever there is a genuine issue of material fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., --- U.S. ----, ----, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The district court, therefore, simply identifies genuine issues of material fact--it does not decide them. See Stewart v. RCA Corp., 790 F.2d 624, 629-30 (7th Cir.1986). Thus, a district court's determination that there is a genuine issue of material fact means only that the evidence is disputed. It does not mean that the evidence does not overwhelmingly favor the movant for the reason that the district court, in deciding whether to grant summary judgment, does not weigh the opposing evidence.[5]
 
 
 77
 I, therefore, disagree with the majority when it "say[s] that when a trial judge rules that there are facts under which a plaintiff can prevail, it is highly inconsistent for him to later find the suit frivolous because it is foreclosed as a matter of law." Majority Opinion at 1158. To the contrary, it is perfectly consistent for a district court to deny summary judgment and, after trying the case, hold that the plaintiff's suit is frivolous.[6] Indeed, any number of courts have permitted cases to go to trial that they later have found to be frivolous. See, e.g., Lewis v. Brown & Root, Inc., 711 F.2d 1287 (5th Cir.1983) (finding suit frivolous after dismissing suit at close of plaintiff's case); Coleman v. General Motors Corp., 667 F.2d 704 (8th Cir.1981) (finding suit frivolous after 11-day bench trial); Harris v. Plastics Manufacturing Co., 617 F.2d 438 (5th Cir.1980) (finding suit frivolous after granting motion to dismiss under Fed.R.Civ.P. 41(b) at close of plaintiff's case); Carrion v. Yeshiva University, 535 F.2d 722 (2d Cir.1976) (finding suit frivolous after dismissing it at close of plaintiff's case); Piljan v. Michigan Department of Social Services, 585 F.Supp. 1579 (E.D.Mich.1984) (finding suit frivolous after 8 years of litigation and dismissal at close of plaintiff's case pursuant to Fed.R.Civ.P. 41(b)); Steinberg v. St. Regis/Sheraton Hotel, 583 F.Supp. 421 (S.D.N.Y.1984) (finding suit frivolous after trial); Lacy v. General Electric Co., 558 F.Supp. 277 (E.D.Pa.1982) (finding suit frivolous after trial), aff'd, 786 F.2d 1147 (3d Cir.1986); Brisbane v. Port Authority of New York & New Jersey, 550 F.Supp. 222 (S.D.N.Y.1982) (finding suit frivolous after 6-day trial); Hill v. BASF Wyandotte Corp., 547 F.Supp. 348 (E.D.Mich.1982) (finding suit frivolous after 9-day bench trial); Colucci v. New York Times Co., 533 F.Supp. 1011 (S.D.N.Y.1982) (finding suit frivolous after trial); Dailey v. District 65, UAW, 505 F.Supp. 1109 (S.D.N.Y.1981) (finding suit frivolous after bench trial); Flora v. Moore, 461 F.Supp. 1104 (N.D.Miss.1978) (finding suit frivolous after 5-day trial), aff'd, 40 Fair Empl. Prac.Cas. (BNA) 856, 24 Empl.Prac.Dec. (CCH) p 31,481 (5th Cir.1980); Sierra v. Datapoint Corp., 459 F.Supp. 668 (W.D.Tex.1978) (finding suit frivolous after trial); Reed v. Sisters of Charity of the Incarnate Word of Louisiana, Inc., 447 F.Supp. 309 (W.D.La.1978) (finding suit frivolous after granting dismissal at close of plaintiff's case pursuant to Fed.R.Civ.P. 41(b)); Equal Employment Opportunity Commission v. Kip's Big Boy, 424 F.Supp. 500 (N.D.Tex.1977) (finding EEOC's suit frivolous after trial); Sek v. Bethlehem Steel Corp., 421 F.Supp. 983 (E.D.Pa.1976) (finding suit frivolous after trial), aff'd, 565 F.2d 153 (3d Cir.1977), cert. denied, 436 U.S. 920, 98 S.Ct. 2268, 56 L.Ed.2d 761 (1978); Equal Employment Opportunity Commission v. Service Container Corp., 418 F.Supp. 898 (W.D.Okla.1976) (finding EEOC's suit frivolous after trial).[7]
 
 
 78
 In this case, the district court's opinion denying the defendant's motions for summary judgment, upon which the majority relies, is simply a 2-page transcript of the court's decision from the bench.[8] As an examination of the court's oral opinion makes clear,[9] the district court merely ruled that the issue of LOF's good faith is a question of fact, rather than one of law. Because it did not consider the parties' evidence, the district court's opinion does not suggest that the EEOC's suit was not frivolous. As another district court explained in a similar case:
 
 
 79
 This was clearly one of the most frivolous employment discrimination actions ever brought. The fact that it survived a summary judgment motion merely indicates that at the time that motion was brought, though the case seemed very weak, there did appear to be genuine issues of fact sufficient, under the strict standards of this circuit, to warrant denial of the motion.
 
 
 80
 Steinberg, 583 F.Supp. at 424.
 
 
 81
 In addition to relying on the district court's denial of summary judgment, the majority points to three pieces of evidence that it believes support the EEOC's argument that LOF's employment practices were not in conformity with the EEOC's regulation: first, the EEOC "attempted to bring out that LOF had exported to Ottawa the same employment classifications developed in Toledo, Tr. 3065-3100, although these classifications had been created to comply with a stricter Ohio protective statute"; second, the EEOC "also sought to establish that some of the 'male' jobs at Ottawa did not require overtime that would have been illegal for women, Tr. 3106-3110"; and third, the EEOC sought to demonstrate "that alternative ways of organizing the workforce would have allowed women to work in jobs that did require overtime, Tr. 3143-46." Majority Opinion at 1161. My review of the record persuades me, however, that, whatever the EEOC hoped to prove, it adduced no evidence that a single job from which women were excluded did not require overtime in violation of Illinois law.[10] Moreover, the EEOC introduced no evidence that alternative methods of organizing the workforce would have been possible or feasible given the recurrent overtime imposed by the glass manufacturing process.[11] The absence of any such evidence is fatal to the EEOC's claim that LOF's segregated workforce was not in conformity with the EEOC's guideline. I thus believe that it was unreasonable for the EEOC to argue that LOF did not conform to the Commission's regulation given its lack of evidence essential to rebut LOF's defense of compliance with the EEOC's regulation.
 
 C. Reliance on the EEOC's Regulation
 
 82
 The majority states that the EEOC "sought to demonstrate that LOF did not actually rely on EEOC pronouncements in formulating its employment practices--suggesting that LOF did not conscientiously inquire into the relationship between Title VII and state law until 1968, when Nancy Raitz brought an EEOC charge against LOF, Tr. 3058-61." Majority Opinion at 1161. That portion of the record to which the majority refers, however, establishes only that LOF did not perform an internal review of the contracts in effect at its plants prior to July 2, 1965, and that LOF did not have occasion again to consider LOF's practices with regard to the EEOC's guidelines until Nancy Raitz brought a charge before the EEOC in March 1968. Against this must be weighed evidence that we and the district court characterized as "overwhelming" evidence that LOF relied upon the EEOC's regulation.[12] Le Beau I, 727 F.2d at 148-49. Given the weight of evidence that LOF was aware of and sought to comply with the EEOC's regulation, I find the EEOC's argument that LOF did not rely on its guidelines unreasonable on the facts.[13]
 
 
 83
 The majority also states that "[s]ince an award of attorneys' fees is committed to the discretion of the district court, ... it would be improper to introduce a practice of affirming the exercise of that discretion on grounds that do not appear in the district court's decision." Majority Opinion at 1161 n. 12. With minor qualifications,[14] I concur. The majority further states that we should not affirm the fee award because "[t]he district court did not assess the quantity or quality of the EEOC's evidence." Id. If I thought that this were the case, I would agree; however, I believe that the district judge clearly took into account the EEOC's evidence, or rather the lack of evidence, when he awarded fees. It should be remembered that the district judge presided over this case since it was assigned to him in 1974, and that he was intimately familiar with the facts. He already had discussed the parties' evidence in detail in his opinion on the merits. See Le Beau v. Libbey-Owens-Ford Co., No. 71 C 1902 (N.D.Ill. Mar. 31, 1982). It is evident from the district judge's reference in his opinion awarding fees to his opinion on the merits that he was well aware of the relevant considerations. To the extent that the majority suggests that the district judge should have repeated findings of fact that he already had made or should have made more detailed findings than were contained in his thorough opinion on the merits, they invite district courts to engage in rituals that exalt form over substance. See Kirchoff v. Flynn, 786 F.2d 320, 331 (7th Cir.1986) (Eschbach, J., dissenting from reversal of fee award).
 
 
 84
 With all due respect for my colleagues, if my brethren believe that the district judge has not assessed the quality or quantity of the EEOC's evidence, then they should remand this case to the district court for further consideration of the merit or frivolity of the EEOC's suit. See, e.g., Kirchoff, 786 F.2d at 328 (majority opinion). By declining to remand this case, they make themselves a discretionary decision which should be made in the first instance by the judge most familiar with this litigation.
 
 III
 
 85
 When the EEOC intervened in this case in 1975, four years after suit was filed, it had no reasonable evidence that LOF and Local 19 had violated Title VII. After six years of discovery and a lengthy trial, it still has no reasonable evidence that the defendants violated Title VII. The EEOC has offered no explanation of its lack of any reasonable evidence in support of its theory of the case. This absence of evidence at trial is the best indication that the EEOC could not reasonably have believed that it could rebut LOF's and Local 19's defense of good faith reliance on and conformity with the EEOC's guideline, and, therefore, that its suit was frivolous. The Commission's intervention in and continued prosecution of this case was not only frivolous, unreasonable, and without foundation, but also approaches bad faith.[15] I therefore would affirm the district court's award of attorney's fees to LOF and Local 19.
 
 
 
 *
 The Order modifying this opinion is published at 808 F.2d 1272
 
 
 [1]
 The EEOC also contends that the district court abused its discretion in denying a request for discovery regarding the defendants' submissions on attorneys' fees. Because we hold that the district court abused its discretion in awarding fees, we need not reach this issue
 
 
 [2]
 No female shall be employed in any mechanical or mercantile establishment, or factory, or laundry, or hotel, or restaurant, or barber shop or beauty parlor, or telegraph or telephone establishment or office thereof, or in any place of amusement, or by any person, firm or corporation engaged in any express or transportation or public utility business, or by any common carrier, or in any public or private institution or offices thereof, incorporated or unincorporated in this State, more than eight hours during any one day nor more than forty-eight (48) hours in any one week. The hours of work may be so arranged as to permit the employment of females at any time so that they shall not work more than eight hours during the twenty-four hours of any day
 
 
 [3]
 As we noted in the merits appeal, the district court probably erred in entering judgment for the individual plaintiffs on the issue of liability. Section 713(b), 42 U.S.C. Sec. 2000e-12(b), states that no person "shall be subject to liability" (emphasis supplied) if he proves good faith reliance upon the EEOC's written interpretation of the law, and the district court ruled that the defendants had made out such a defense. As we also noted earlier, "this is a matter more of form than substance," 1984 Appellate Opinion, 727 F.2d at 147
 
 
 [4]
 The defendants had cross-appealed from the district court's order allowing the EEOC to intervene in this action. Because the EEOC prevailed on this issue, the district court cut down the defendants' estimate of appellate fees by five percent. LeBeau v. Libbey-Owens-Ford Co., No. 71-C-1902, slip op. at 7-8 (N.D.Ill. Dec. 17, 1984) (the "1984 District Court Opinion")
 
 
 [5]
 The EEOC is liable for attorneys' fees the same as any private party. 42 U.S.C. Sec. 2000e-5(k). "[A]lthough a district court may consider distinctions between the Commission and private plaintiffs in determining the reasonableness of the Commission's litigation efforts, we find no grounds for applying a different standard whenever the Commission is the losing plaintiff." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 423 n. 20, 98 S.Ct. 694, 701 n. 20 (1978)
 
 
 [6]
 We do not wish to create the impression that these "Reichenberger factors" create a circuit test for assessing prevailing defendants' claims for attorneys' fees that in any way differs from the standard articulated by the Supreme Court in Christiansburg. Defendant has cited us only one other Seventh Circuit case (and we have found no others) that recites these four factors, see Munson v. Friske, 754 F.2d 683, 696-97 (7th Cir.1985); that case does not apply them as a distinct test. Yet, because this is the framework around which the district judge organized his inquiry, we discuss Reichenberger and its factors here
 
 
 [7]
 We do not suggest, as the dissent assumes, that no suit that survives a motion for summary judgment can ever be found frivolous. We do, however, believe that the district court would not have denied the motion for summary judgment if, as in Raitz, LOF's state of mind had presented no material question of fact. Since the district court believed in 1979 that LOF's good faith was an open question (on which the EEOC could have prevailed, however unlikely it may have looked), Raitz was obviously no impediment to bringing this suit
 
 
 [8]
 In Reichenberger, a Sec. 1983 action, we ultimately found that plaintiffs had not suffered an "injury or deprivation of a constitutional magnitude," 660 F.2d at 288, when they sought damages and an injunction on account of an alleged conspiracy to suppress nude dancing in local bars
 
 
 [9]
 It ruled that the plaintiffs had made out their prima facie case and it denied the defendants' motions both for summary judgment and for a directed verdict at the close of the plaintiffs' case. In our decision on the merits appeal, we affirmed the district court's equitable denial of backpay, noting that the women's failure to complain "not only affects the equities of the situation, but it also means that plaintiffs have not met their burden of proof to show that each was 'a potential victim of unlawful discrimination'.... No such showing was made, on any proper view of this record." 1984 Appellate Opinion, 727 F.2d at 150 (emphasis supplied) (quoting Teamsters )
 
 
 [10]
 The district court had also denied Local 19's Rule 12(b)(6) motion. Local 19 had asserted that "[a] defendant cannot be liable under Title VII where his actions had a legitimate, nondiscriminatory purpose.... This defendant's allegedly discriminatory actions were undertaken to ensure compliance with the Illinois Female Employment Act ... and were not undertaken with any discriminatory purpose." Motion to Dismiss (Dec. 6, 1978), at 2
 
 
 [11]
 The appellees call to our attention several instances in which the EEOC asserted an anomalous position during the fifteen-year history of this case. These include the deposition testimony of David Zugschwerdt, EEOC Assistant General Counsel, that Title VII had in 1965 "superseded" state protective legislation, Zugschwerdt Deposition at 72, and the EEOC's response to a Request for Admission of Fact, that the Illinois statute conflicted with Title VII "and was, therefore, void and not enforceable since July 2, 1965." Plaintiff-Intervenor's Responses to Request for Admission of Fact (Jan. 8, 1981), at 7. We also note that the EEOC clung to its allegations of continuing discrimination much too long (until October 1978, three years after intervention) and probably should never have brought them at all
 Yet, the district court did not rely on these as grounds for awarding the defendants fees. Further, even assuming that these were unreasonable actions, it is our duty to review the district court's decision on the EEOC's case as a whole. Other examples cited by the defendants just do not rise to the level of frivolousness. For example, LOF cites to us the fact that the district court commented that "[d]iscovery was extensive, proceeding over a terrain made rugged by severe advocacy and multi-briefed motions." 1982 District Court Opinion at 4. This does not seem damning to us, as the district court did not single out the EEOC as the guilty party--or even hint that any party was guilty. It did criticize the animosity persisting among counsel, id., but laid the blame on both sides.
 
 
 [12]
 The dissent criticizes our emphasis on what the EEOC "tried to show," asserting that the proper inquiry is into what they actually managed to show. Our point in the preceding passage was, however, merely that the EEOC's theory of the case has remained the same through the litigation and is not the product of post hoc rationalization, as LOF charges. The dissent believes that an award of fees is justified because the EEOC proceeded to trial with "no reasonable evidence" that LOF and Local 19 had violated Title VII. The district court, however, awarded fees on the ground that this suit was legally foreclosed by the EEOC's own regulations and the Raitz case. Since an award of attorneys' fees is committed to the discretion of the district court, at least under circumstances like those before us, it would be improper to introduce a practice of affirming the exercise of that discretion on grounds that do not appear in the district court's opinion. The district court did not assess the quantity or quality of the EEOC's evidence in its 1984 opinion
 Furthermore, we do not agree with the dissent that the EEOC put on "no reasonable evidence" of a Title VII violation. It is undisputed that the EEOC carried its burden of establishing a prima facie case. The burden then shifted to LOF to articulate a defense to liability--here, its good faith reliance on the Illinois statute and the 1965 guidelines. It fell to the EEOC to rebut this defense. It did not succeed, but we believe that it put in some evidence tending to show that the asserted "reliance" was merely pretext. The EEOC elicited testimony suggesting that when LOF opened its Ottawa plant it simply imported the "extra board" system from Toledo, where LOF was subject to a more stringent Ohio protective statute. Tr. at 3063-3100. This would suggest that the "extra board" was not a conscious attempt by LOF to comply with the Illinois statute. There was also testimony that suggested that LOF did not endeavor to tailor its operations closely to the requirements of the Illinois statute. Mr. Kramer testified that if some jobs in a department called for overtime the entire department was made a "male" department. This was because of the way that seniority "bumping" rights were set up. Tr. at 3099-3105. Although overtime was voluntary, and often performed by different individuals than had worked the first eight hours at a particular post, LOF had never considered allowing women to work in these departments but to remove their names from the overtime "bidding" lists. Tr. at 3143-46. In fact between 1965 and 1970 LOF never considered any alternative to the extra board system. Tr. 3145-46.
 We do not suggest that it was erroneous to discount this testimony in light of other testimony, put on by LOF and Local 19. Nonetheless, it is incorrect to say that the EEOC put on no evidence whatsoever.
 
 
 [13]
 Defendants argue that the EEOC took a contradictory view of its own regulation in the amicus curiae brief it filed in the Supreme Court in Albemarle. In arguing against a "good faith" defense to Title VII race discrimination the EEOC wrote:
 As we understand the application of the "special circumstances" standard to the question of back pay, the Act's policies of making the victims whole and deterring future discrimination requires back pay to be awarded unless, for substantial reasons that are consistent with the purposes of the Act, awarding back pay would be unjust to the employer. One such special circumstance, in the context of employment practices that discriminate on the basis of sex, might be the employer's reasonable and good-faith reliance upon state female "protective" statutes.
 EEOC Amicus Curiae Brief at 26, Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (emphasis supplied) (citations omitted). The EEOC argued in the case before us that LOF's practices were, in effect, neither reasonable nor in good faith and that thus denying backpay would frustrate the policies of Title VII, as articulated in Albemarle. Appellants' Merits Brief at 37-38.
 We note in passing that this EEOC position is no less in the spirit of Albemarle than Local 19's 1978 contention that lack of discriminatory intent is a defense to back pay. See Motion to Dismiss (Dec. 6, 1978), at 1; supra note 9.
 
 
 [14]
 Nor is this court's decision in Stewart v. General Motors Corp., 542 F.2d 445 (7th Cir.1976), a bar. In that race-discrimination case, we rejected the contention that the employer's good faith might be a bar to backpay, noting that the "special factors" preventing an award of backpay are narrowly construed "and usually include only circumstances where state legislation is in conflict with Title VII." Id. at 451. The EEOC's argument was that LOF was not faced with such a conflict
 
 
 [15]
 Defendants have in addition moved this court under Federal Rule of Appellate Procedure 27(a) and 28 U.S.C. Sec. 1927 to award them their attorneys' fees, expenses and costs for this appeal because of "EEOC's serious misrepresentations, omissions and distortions of record in this matter." We decline to do so. Obviously, in light of the result we reach here, we did not find this a frivolous appeal. Further, if the EEOC has at times been less than candid about its position, its performance has been closely matched by that of the appellees
 
 
 [1]
 The exact questions and answers were:
 Q: And if I told you, sir, that Libbey-Owens-Ford's records reflected on April 10, 1956 a woman named Ms. Clark worked 9 1/2 hours, ... [w]ould you have been aware of that?
 A: I probably heard about it.
 Q: And if Libbey-Owens-Ford's records reflected that Helen Dougherty on August 7, 1966 worked that pay period two 8 1/2 hour days, would you have known about that?
 ....
 A: I may have heard about that also.
 ....
 Q: And if Libbey-Owens-Ford's records reflected that in the pay period ending June 26, 1966 a Ms. Eastman worked a 16-hour day, double, would you have known about it?
 ....
 A: I probably heard about that one because that was unusual.
 Tr. 3875-78. The probative value of these three alleged incidents, one of which dates to 1956--nine years before the issue of LOF's compliance with Title VII could have arisen--to establish that the EEOC's suit was not frivolous is not apparent to me.
 
 
 [2]
 The portion of the transcript to which the majority refers simply consists of Kramer's testimony that as of 1965 Illinois law allowed exceptions only for emergencies or during wartime. Tr. 3056-57; see also Ill.Rev.Stat. ch. 48, Secs. 5.1 (exceptions), 8.1 (emergency wartime permits) (1969)
 
 
 [3]
 The majority seems to suggest that the merit of the EEOC's suit should not be judged in light of the evidence the EEOC reasonably believed that it could introduce at trial. For example, it criticizes the district court for placing "too much reliance ... on the facts as found at trial to support a finding that the suit should not have been brought." Majority Opinion at 1160. Furthermore, the majority's conclusion that the EEOC's suit was meritorious rests upon its view of what the EEOC "sought to establish" at trial. Majority Opinion at 1161
 I agree with the majority that we should not adjudge the EEOC's suit frivolous simply because it lost at trial. See Majority Opinion at 1160 (quoting Christiansburg Garment Co., 434 U.S. at 422, 98 S.Ct. at 700). I nevertheless believe that the merit of the EEOC's suit cannot be measured by the Commission's unfounded expectations of what it hoped to prove, but must be based upon the evidence that the EEOC reasonably believed it could establish at trial. Absent any other explanation (such as the unexpected unavailability of a witness), the absence at trial of any reasonable evidence as to an essential element of a case indicates that the plaintiff could not reasonably have believed that it could establish that element at trial. Since the EEOC has offered no explanation of the discrepancy between what it attempted to show at trial and what it actually established at trial, the absence at trial of any reasonable evidence to support the EEOC's contentions indicates that it could not reasonably have believed that it could establish that LOF violated Title VII.
 
 
 [4]
 As the majority notes, Majority Opinion at 1161, the Ohio statute at issue in Raitz was stricter than that of Illinois in that the Ohio statute not only prohibited the employment of women for more than 8 hours a day and 48 hours a week, but also barred women from any job that required lifting over 25 pounds, that did not receive at least a half-hour lunch break, or that involved the use of an electric truck. Tr. 3071. The EEOC, however, did not demonstrate that LOF's job classifications were any more restrictive than required under Illinois' less exacting statute
 
 
 [5]
 For example, the critical issue in employment discrimination suits often is the defendant's intent. See Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 513 (7th Cir.1986). "Thus, the credibility of witnesses is often decisive." Id. Because the credibility of witnesses is crucial, a plaintiff can make out a genuine issue of material fact simply by offering proof that "casts doubt upon the veracity of the employer's stated reason for its action." Stumph v. Thomas & Skinner, Inc., 770 F.2d 93, 98 (7th Cir.1985) (citing Herman v. National Broadcasting Co., 744 F.2d 604, 610 (7th Cir.1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985) ). Thus, whenever a case turns on the credibility of a witness's testimony as to the defendant's intent, the suit will survive summary judgment and go to trial, regardless of the weight of the evidence in the defendant's favor
 
 
 [6]
 By way of illustration, a plaintiff in an employment discrimination case might prevail if his testimony as to the defendant's discriminatory intent is credited, while the defendant's testimony as to its lack of any discriminatory intent is discredited. However, the evidence may overwhelmingly indicate that the plaintiff's testimony is not to be believed. In such a case, the trial judge can rule that there are facts under which the plaintiff could prevail at trial, i.e., the plaintiff's story might be believed, and consistently find that the suit was frivolous
 
 
 [7]
 In Soderbeck v. Burnett County, 752 F.2d 285, 295 (7th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985), cited by the majority, we stated that "[s]ince the plaintiff succeeded in making out a prima facie case against these defendants, that is, a case strong enough to withstand a motion for directed verdict (incorrectly granted by the district judge), the case against them was not frivolous." In that case, the district court directed verdicts at the close of plaintiff's case in favor of three of the five defendants. The jury then returned verdicts against the two remaining defendants. On appeal, we affirmed the judgment against one of the defendants and reversed the directed verdicts in favor of the three defendants. (We also reversed the judgment against the other defendant for a reason not relevant to this case). We reversed the award of attorney's fees to the three defendants because, having lost on appeal, they were not prevailing parties. In addition, the plaintiff's case, which was strong enough to win judgment against one of the defendants, clearly was not frivolous. Our passing statement that the plaintiff's case was not frivolous because it was strong enough to withstand a motion for directed verdict thus was unnecessary to our decision, and cannot dictate the disposition of this appeal
 
 
 [8]
 In contrast, the trial transcript consists of 4493 pages
 
 
 [9]
 The district court's complete discussion of defendants' motions for summary judgment consists of the following:
 Defendants argue also, assuming arguendo liability on their part, that plaintiffs are entitled to no remedy under Title VII as a matter of law due to the defendants' good faith reliance on the Illinois Female Protection Statute. Specifically, the defendants refer to the tension that existed between the federal law, which aimed at insuring equality of sexes in employment opportunities, and the state law which was designed to prohibit the employment of women beyond a specified number of hours per day and per week.
 The question of whether the defendant Libbey-Owens-Ford's--whether that defendant's good faith reliance on the state protective statute is a bar to damages is a question of fact and cannot be decided as a matter of law. While Section 713(b) of Title VII does exempt a defendant employer who was acting in good faith from liability for monetary damages, it requires that the defendant employer "plead and prove that the act or omission complained of was done or omitted in good faith." 42 USC Section 2000(e)(12)(b).
 In other words, the defendants need to show that they actually acted in good faith. It is not sufficient to establish the existence of the state protective statute to invoke the good faith defense; rather, the defendants would need to show that they in fact knew of and adhered to the requirements of the state protective statute and that any violation of Title VII was unavoidable and a direct result of their adherence to the state protective statute.
 Wherefore, for the foregoing reasons, the companion motions for summary judgment of the defendant Libbey-Owens-Ford and of the defendant Local 19 should be, and the same hereby are, denied.
 Tr. of Hearing on Motion for Summary Judgment 254-55 (May 23, 1979).
 
 
 [10]
 That portion of the transcript to which the majority refers, Tr. 3065-3100, 3106-3110, establishes that women were excluded from certain jobs at the Toledo plant that required lifting of more than 25 pounds of materials and from certain jobs in the Plastic and Assembly Departments at the Ottawa plant that required daily overtime for clean-up. The record, however, does not establish that any of the jobs from which women were excluded did not require overtime in violation of Illinois law. See Tr. 3104
 
 
 [11]
 That portion of the transcript that the majority cites, Tr. 3143-46, establishes only that from July 1965 until March 1970 LOF did not consider alternative methods of organizing its workforce. As the district judge noted, Tr. 3145, the evidence does not establish that any alternative was possible or economical. Indeed, LOF adduced testimony that the alternatives proposed by the EEOC were uneconomical or unworkable. See Tr. 3186-87
 
 
 [12]
 For example, LOF officers became familiar with Title VII "almost as soon as it was passed." Tr. 2890. On June 25, 1965, before the EEOC even issued its guidelines, LOF circulated a memorandum to its plant managers declaring that the company would comply with Title VII, but would have to proceed cautiously until some guidelines were established. See Le Beau I, 727 F.2d at 148; see also Tr. 3195-97. In November, 1965, after the EEOC issued its guidelines, LOF distributed copies of the regulations to its officers. Tr. 2896-97
 
 
 [13]
 In a footnote, the majority states that the EEOC "put in some evidence tending to show that the asserted 'reliance' was merely pretext." Majority Opinion at 1161 n. 12 (emphasis in original). The evidence to which the majority refers is testimony that LOF imported the "extra board" system from its Ohio plant and that LOF did not consider permitting women to work overtime in departments other than the plastics and assembly departments. I have already addressed the former point. See Dissent at 1161 n. 4
 As for the latter point, I respectfully believe that the majority misunderstands the testimony as to how overtime was scheduled. There were two types of overtime at LOF's Ottawa plant: the first was daily overtime, i.e., working over 8 hours in one day, and the second was weekend overtime, that is, working on Saturday or Sunday. Tr. 2835. Weekend overtime, which was required to "balance" production, Tr. 2838, 4341-42, 4409-10, was voluntary. Tr. 3114, 4333-34, 4424-25. In addition to weekend overtime, however, particular jobs also required daily overtime. Rather than being voluntary, daily overtime was involuntary in the sense that men who "took certain jobs ... knew when they took the job that the overtime was required, [and] that they would have to work overtime." Tr. 2851; see also Tr. 2836, 3084, 3142-44.
 Moreover, there would be occasions--perhaps one to six times a year--when LOF, in response to high demand, would schedule the plant to work six days in one week. See Tr. 4420-23. In contrast to weekend overtime required to balance production, overtime on these scheduled days was not voluntary. See Tr. 4421. Furthermore, the system of "split shifts" (in which two employees would split the shift of an absent worker so that the employee on the earlier shift would work 4 hours longer and the employee on the later shift would come in 4 hours earlier) was used extensively in three-shift departments when the labor pool could not supply replacements for absent workers. See Tr. 2816-17, 3187.
 The evidence thus establishes that LOF did not employ women in departments other than plastics and assembly because overtime was required for particular jobs, scheduled days, and split shifts. These reasons clearly were proper reasons under Illinois law and the EEOC guidelines for excluding women from jobs outside the plastics and assembly departments. Thus, that the EEOC adduced evidence that LOF did not consider employing women in the other departments for only 8 hours a day does not change my conclusion that the EEOC could not reasonably have believed that it could rebut LOF's defense.
 
 
 [14]
 It surely would be proper to affirm a discretionary decision on a ground that did not appear in the district court's opinion if we conclude, on the basis of the overwhelming evidence in the record before us, that the contrary decision would have been an abuse of discretion. Moreover, the record as a whole often makes clear that the district judge implicitly considered matters that might not appear expressly in the district court's opinion. See Kirchoff v. Flynn, 786 F.2d 320, 328-31 (7th Cir.1986) (Eschbach, J., dissenting). It is proper to affirm the district court's decision so long as we conclude that the district court relied upon the ground on which we affirm
 
 
 [15]
 For example, until it was finally forced to abandon its claim in 1978, the EEOC alleged that LOF continued to discriminate against women. Moreover, as late as early 1981--only 9 months before trial--the EEOC maintained that, since state law conflicted with Title VII, the Illinois Female Employment Act was "void and not enforceable since July 2, 1965." Plaintiff-Intervenor's Response to Request for Admission of Fact, at 7 (Jan. 8, 1981). Assertions such as these that are clearly contrary to the facts and the law suggest that the EEOC acted in subjective bad faith